Points decided.

# THE UNITED STATES, RESPONDENT, *v.* WILLIAM MAYS AND W. H. OVERHOLT, APPELLANTS.

TERRITORIAL DISTRICT COURTS—PRACTICE IN.—The territorial district courts are not district courts of the United States. The legislature may prescribe the practice in the district courts of the territory, in cases arising under the constitution and laws of the United States, as well as in those arising under the laws of the territory. In this territory, however, the legislature has not done so; and the courts are at liberty to make orders and adopt regulations concerning the practice in United States cases, for themselves.

TERRITORIAL COURTS—JURISDICTION.—The courts of the territory are in some respects *sui generis.* They have a broader and more extensive jurisdiction than state courts, or the district and circuit courts of the United States.

JURY FROM THIS VICINAGE.—A jury summoned under the laws of the territory from the county in which the district court is being held, for the transaction of business under the territorial laws, may be adopted by the court for the transaction of business and the disposition of cases arising under the laws of the United States. Such a jury is, in every respect, from the vicinage, since it is drawn from the district within which the crime was committed, although the commission of the crime took place in another county of the district.

IDEM.—Congress having, by law, given the district courts of the territory jurisdiction of offenses against the laws of the United States, and having given the justices of the supreme court power to fix the times and places of holding district courts; by so fixing them they have also fixed the place of trial of offenses against the laws of the United States. Congress, therefore, having, by means of the power thus delegated, fixed the place of trial, has disposed of all questions of jurisdiction of the court, as well as all objections to the jury as not being drawn from the vicinage.

INSTRUCTIONS.—An instruction to the jury "that if they believe from the evidence that the defendants feloniously took possession of the United States mail, or any part thereof, by force or intimidation of or from a carrier of the mail, then the offense of robbery is complete," is simply a definition of the term robbery, as applied to the case. It is not erroneous.

INDICTMENT.—An indictment must contain so many of the substantial words of the statute as shall enable the court to see on what statute it is framed, and such other words as are necessary to a complete description of the offense; or words which are their equivalents or more than their equivalents in meaning.

IDEM—JEOPARDY.—Jeopardy is putting in danger. The word danger is the equivalent of jeopardy. The words of an indictment, "in bodily fear and danger of his life, then and there feloniously did put," are equivalent to the words "put his life in jeopardy."

DANGEROUS WEAPONS, USE OF.—For a person to arm himself with dangerous weapons and carry them to the place of the robbery, with intent to kill, is the "use of dangerous weapons."

APPEAL from the second judicial district.

*F. E. Ensign*, for the appellants.

*Huston & Gray*, for the respondent.

MORGAN, C. J., delivered the opinion; PRICKETT, J., con-· curring.  BUCK, J., having prosecuted in the court below as United States district attorney, took no part in the hearing or decision.

In November, 1879, the defendants were held by James Stout, Esq., United States commissioner, to await the action of the grand jury on a charge of robbing the United States mail in Owyhee county, Idaho territory.  At the January term of the district court, held at Boise city, Ada county, Hon. H. E. Prickett presiding, a grand jury was summoned in conformity with the provisions of section 27 of an act concerning grand and petit jurors of the territory of Idaho, approved January 10, 1873, and were impaneled and sworn as a territorial grand jury.  They were then charged and directed to inquire into offenses committed against the United States, in the second judicial district of which the said Ada and Owyhee counties were a part.

Defendants interposed a challenge in writing to the panel, on the ground that the said grand jury were not selected, summoned, or impaneled in accordance with any law of the United States, and that they had no jurisdiction to inquire into offenses against the laws of the United States, or any offense committed outside the limits of the county of Ada, which challenge was disallowed by the court, to which ruling defendants excepted.  The said grand jury afterwards, to wit, on January 13, 1880, found and reported to the court a bill of indictment against the said defendants for robbing a carrier of the United States mail, of such mail in Owyhee county, in said territory.

Afterwards, on the seventeenth day of January, 1880, the said defendants were brought into court to be tried for said offense, by a jury selected in conformity with the laws of said territory, from the county of Ada alone, and summoned by the sheriff of said county.  Before said jury

were sworn and impaneled, the said defendants interposed a challenge to the whole panel and array of said jurors in writing, as follows, to wit: "That the offense to be tried was an offense against the laws of the United States, and that the said jury had not been drawn, selected, or summoned in conformity with any law of the United States;" which challenge was disallowed by the court, and the said defendants then tried, convicted, and sentenced to imprisonment in the territorial prison, at hard labor, for the period of their natural lives.

The part of the indictment necessary to notice is as follows: "The said defendants, William Mays and William H. Overholt, are accused by the grand jury, by this indictment, of the crime of robbing a United States mail carrier, of the United States mail, committed as follows: The said William Mays and William H. Overholt, on the twentieth day of November, 1879, at the county of Owyhee, in the territory of Idaho, in and upon one Joseph Goodwin, the said Joseph Goodwin then and there being a carrier of the United States mail, and the said Joseph Goodwin then and there having the said mail in his possession, feloniously did make an assault, and the said Joseph Goodwin, in bodily fear and danger of his life, then and there feloniously did put, and of the said mail then and there of the property of the United States, and of the value of one thousand dollars, from the person and possession, and against the will of the said Joseph Goodwin, then and there feloniously, and with force and violence, did rob, take, steal, and carry away, the said William Mays and William H. Overholt each then and there being severally armed with a dangerous weapon, to wit, a gun, with intent, if then and there resisted by the said Joseph Goodwin, the said Joseph Goodwin then and there to kill, against the peace," etc.

The instruction offered by the prosecution objected to by the defendant, and given by the court, is as follows: "The jury are instructed, that if they believe from the evidence that the defendants feloniously took possession of the United States mail, or any part of it, by force or intimida-

tion of or from a carrier of the mail, then the offense of robbery was complete."

The first and second objections to the proceedings of the court below, are to the manner of summoning and impaneling the grand and trial juries. We have examined all the authorities cited, which discuss the method of summoning juries for territorial courts, in the trial of offenses against the laws of the United States, with the following result: The case of *Clinton* v. *Englebrecht* was one arising wholly under the statutes of the territory of Utah, and the supreme court, in that case, simply decide, that the territorial court is not a district court of the United States; and that the legislature of the territory having prescribed the mode in which juries should be drawn and summoned for the district court, it was proper and necessary that said court should follow the mode therein pointed out.

In this territory, the legislature has not pointed out the method to be pursued by the district court while sitting for the trial of offenses against the laws of the United States.

This is clearly indicated by the fact that the grand and petit juries, to be drawn for the district court, have a jurisdiction restricted to the county in which the court is, for the time being, in session. It is said, in *United States* v. *Dawson*, 15 How. 467 (20 Curt. 598), that congress, having fixed the place of the trial of an offense against the laws of the United States, committed outside the limits of a state, disposes of all questions of jurisdiction as to venue, trial in the county, and jury from the vicinage.

Congress has by law given the district court of this territory jurisdiction of offenses against the laws of the United States. It has further given the judges of the supreme court power to fix the times and places of holding the said court. The judges have so fixed them. By fixing the place of holding the court, they have fixed the place of trial of such offenses. Congress, therefore, having by means of the power delegated to the judges of this court fixed the place of the trial of the offense mentioned in this indictment, has, in the language of this decision, disposed of all questions

of jurisdiction of the court as well as all objections to the jury as not being drawn from the vicinage.

The court, in the *United States* v. *Dawson,* referred to above, decided that a grand and petit jury drawn from the district and state of Arkansas was a proper and competent jury in each case to find a bill of indictment and try a person for a crime committed outside of the said state of Arkansas; and in the adjoining Indian territory, it follows by a parity of reasoning, that congress, although by indirect means, having fixed the place of trial of the offense charged against these defendants, the grand and petit jury in use in said court was a proper and legal jury to whom to submit the cause.

Again, it may be said, considering the powers of the said district court as a court sitting for the trial of offenses against the laws of the United States, that congress has by law conferred upon the territorial court the same jurisdiction possessed by the district and circuit courts of the United States in all cases arising under the constitution and laws of the United States. (Rev. Laws U. S., sec. 1910.) The means and methods to be used in exercising such jurisdiction, so far as the impaneling and summoning jurors is concerned, have not been pointed out or fixed by congress, neither have they by the laws of the territory of Idaho.

It follows, then, *ex necessitate rei,* that these courts being endowed with this jurisdiction, and being called upon to exercise it, and the forms and modes of procedure not being pointed out by congress nor by the territorial laws, it remains for these courts to adopt such regulations as the nature of the causes coming before them seems to require, not in conflict with the constitution and laws of the United States or of the territory. This the court may do by general rules applicable to all cases, or by special direction in any given case, or for any particular term, having a care to adopt such means as in their judgment will best secure the ends of justice, protect the rights of the citizen, and give offenders a fair and impartial trial.

It is clearly indicated that this court may pursue this

course, in the opinion of the supreme court of the United States, in the case of *Hornbuckle* v. *Tombs*, 18 Wall. 656 (see bottom of page). In that case the court say: From a review of the entire past legislation of congress on the subject under consideration, our conclusion is that the practice, pleadings, and forms and modes of proceeding of the territorial courts, as well as their respective jurisdictions, subject, as before said, to a few express or implied conditions in the organic act itself, were intended to be left to the legislative action of the territorial assemblies, and to the regulations which might be adopted by the courts themselves.

The courts of the territory are in some respects *sui generis.* They have a broader and more extensive jurisdiction than state courts, since they are endowed with the same jurisdiction as the district and circuit courts of the United States in all cases arising under the constitution and laws of the United States, with slight exceptions. They have a more extensive jurisdiction than the United States district and circuit courts, as they are clothed with plenary municipal jurisdiction in the territory. They are called upon by the people of the United States to exercise the one, by the people of the territory to exercise the other. In matters necessary to the exercise of this extensive jurisdiction, and not regulated by laws applicable to said courts, it remains for them to adopt such rules and regulations as will enable them to administer justice according to law.

The jury in the case at bar was in every respect a jury from the vicinage, since it was drawn from territory wholly within the district where this crime was committed. It is not pretended that they were selected with a view to secure indictment or conviction, but in every respect good and lawful men.

The third error assigned is in the giving the first instruction offered on the part of the prosecution, and various authorities are cited to sustain the view of appellants. The first series so cited are to the point that preponderance of evidence is not sufficient to convict, in criminal cases. This proposition is not questioned. Second, that an erroneous

instruction is not cured by afterwards instructing directly to the contrary. This last objection and those that follow are based upon the assumption that the instruction is in itself erroneous. Is this assumption correct? This instruction does not direct the jury to find the defendant guilty. It does not assume to cover the whole case. It is simply a definition of the term robbery, as applied to this case. Robbery is defined in the law to be the felonious taking of the money, goods, or other valuable thing from the person of another, by force or intimidation.

The instruction is: "The jury are instructed that if they believe from the evidence that the defendants feloniously took possession of the United States mail or any part of it by force or intimidation of or from a carrier of the mail, then the offense of robbery was complete."

The court does not instruct the jury that they should then find the defendants guilty, nor that they are guilty, but that the crime of robbery was complete. The court might not only leave out the words, "beyond a reasonable doubt," but you may strike out the words, "if they believe from the evidence that," and the instruction would still be correct and proper. It would then read: "The jury are instructed that if the defendants feloniously took possession of the United States mail or any part of it by force or intimidation of or from a carrier of the mail, then the offense of robbery was complete."

It will be seen that it only defines and specifies what constitutes the crime of robbing the United States mail carrier of the United States mail, with which defendants were charged. It is not "ambiguous," not contrary to the sixth or any other instruction, and not erroneous. The law is that all the instructions given by the court are to be taken together, and it is believed that all instructions given in the case taken together constitute a complete exposition of the law relating thereto.

The fourth objection is, that the offense described in the indictment did not warrant the judgment of the court. The essential words of the statute are, "put his life in jeopardy by the use of dangerous weapons." The rule is, that

the pleader must employ so many of the substantial words of the statute as shall enable the court to see on what statute it is framed, and such other words as are necessary to a complete description of the offense, or words which are their equivalents or more than their equivalents in meaning.

The allegations in the indictment are, when transposed, as follows: The said William Mays and William H. Overholt, each then and there being severally armed with a dangerous weapon, to wit, a gun, with intent to kill, etc., feloniously did make an assault in and upon the said Joseph Goodwin, in bodily fear and danger of his life, then and there feloniously did put. The word jeopardy is defined to be danger, to expose to loss or injury, peril; jeopard is to put in danger, to expose to loss and injury; jeopardize is putting in danger. The word danger is then the equivalent of jeopardy. It will scarcely be contended that the arming themselves with dangerous weapons, and bringing them there, with intent to kill, is not the use of dangerous weapons.

We are of the opinion, that in the trial of this cause there is no error, and the judgment is, therefore, affirmed.