(February 20, 1884.)

## PEOPLE v. PIERSON.

[3 Pac. 688.]

CRIMINAL LAW—APPEAL—REVIEWING EVIDENCE.—On an appeal from the judgment only, the court cannot inquire whether the verdict is supported by the evidence; this can be done only upon an appeal from the order denying a new trial.

HOMICIDE—EVIDENCE.—In case of a homicide committed by the defendant where the fatal shot was fired while the deceased was retreating and after all danger from him was over, and while defendant was pursuing him, then the defendant is guilty of murder or manslaughter, as the case may be.

INSTRUCTION—WITNESSES.—An instruction as to the credit that should be given to a witness, and one that the same weight should be given to the testimony of defendant when corroborated, as to that of any other witness, invades the province of the jury and is properly refused.

HOMICIDE—DEFENSE OF WIFE—EVIDENCE OF REPUTATION.—When the defendant seeks to justify a homicide on the ground that the killing was necessary to protect the person of his wife, evidence on the part of the prosecution tending to show the bad character of the woman alleged to be the wife of the defendant, and that she kept a house of prostitution, with a view of showing that the deceased was upon the premises for purposes other than felonious, is proper.

INSTRUCTIONS—MOTIVE.—An instruction that if the jury believe from the evidence beyond a reasonable doubt that the defendant killed deceased on account of a desire for revenge for some real or imagined injury, then defendant is guilty of murder, is proper.

INEXCUSABLE HOMICIDE—PURSUING DECEASED.—When the deceased was slain while endeavoring to escape from the defendant, and had

succeeded in wholly withdrawing in good faith from the vicinity of the defendant and his house, and all danger to the person of defendant, to his habitation, or anyone residing therein was over, then the killing can neither be justified, excused or mitigated by declarations of defendants, made to another person shortly before the homicide, and evidence thereof was properly refused.

(Syllabus by the court.)

APPEAL from District Court, Alturas County. Affirmed.

L. Vineyard, for Appellant.

James H. Hawley and T. D. Cahalan, Prosecuting Attorneys for Alturas and Ada Counties, respectively, for the People.

No briefs on file in this case.

MORGAN, C. J.—The defendant, George Pierson, was indicted, tried, and convicted at the October term, A. D. 1882, of the district court for Alturas county, for the murder of John T. Hall, at Vienna, in said county, on the twenty-fifth day of August, 1882. The case is brought to this court by an appeal from the judgment. In the argument of the case considerable time was occupied in the apparent effort to show that the verdict was contrary to the evidence. The court is unable to see any substantial objection to the verdict upon that ground. There is no occasion, however, to consider that branch of the argument. The appeal is taken from the judgment. Subdivision 2, section 465, page 432, of the Revised Laws, provides that the appeal to the supreme court from the district court shall be on questions of law alone. The only method whereby this court can review the evidence for the purpose of determining whether the verdict is sustained thereby, is through an appeal from the order of the court below denying a new trial upon that ground. As no such appeal is taken in the case at bar, we can only review the evidence so far as is necessary to determine the questions of law brought here by the appeal from the judgment.

The bill of exceptions alleges as error the refusal of the court to allow the declarations of the defendant to the deputy sheriff in endeavoring to procure the arrest of deceased for alleged offenses against the wife of defendant, made on the day

of the homicide, and immediately preceding the same; and the ruling of the court in refusing to instruct the jury, at the request of the defendant, that if the jury believe, from the evidence, that the deceased approached the defendant's dwelling at the time of the fatal affray with the intent of committing a felony upon the person of the defendant, or upon the woman in the dwelling of the defendant, whom he claims as his wife and who claims the protection of the defendant, and an asylum in his house, and that the defendant did the killing in order to prevent such felony, then the killing was justifiable, and the jury should acquit. Also in giving the following instructions, to wit: "If you find from the evidence that the defendant was justified, under the rules of law given above, in firing the first shot, but that, after such shot had been fired by the defendant, the deceased, Hall, retreated, and all danger from him was over, and that, while deceased was still retreating and all danger from him being over, the defendant pursued him and fired upon him, thereby inflicting the mortal wound, then the defendant is guilty." While the law recognizes the right of the husband to protect the person of his wife from assault or personal injury, even to the taking of the life of the assailant, still, before this plea can be invoked, it is incumbent upon the defendant to establish two precedent facts to the satisfaction of the jury, to wit: 1. That the relation of husband and wife actually existed between the defendant and the person against whom the assault was threatened or made; 2. That an assault was actually being made or attempted against the wife of the defendant at the time the homicide was committed, and that, in the judgment of a reasonable person, the killing of the deceased was necessary, at the time, to protect the wife from death or great bodily harm.

The appellant also set out in his brief certain assignments of error in admitting and rejecting testimony on the trial, which do not appear in the bill of exceptions, and therefore cannot be considered.

The defendant urges error in the court refusing to give two instructions, as follows: "When the defendant is a witness in his own behalf, as in this case, his evidence is entitled to the same credit as that of any disinterested witness, provided his

testimony is sustained and corroborated by other credible and unimpeached evidence; and also that the defendant Pierson's testimony was to be weighed like the testimony of other witnesses in the case provided it was corroborated by other unimpeached testimony. In the one case the court is asked to charge the jury as to the credit which they should accord to the witness, and, in the other, as to the weight they should give to certain testimony." Either of these charges, if given, would be an invasion by the court of the especial province of the jury, and they were properly refused.

Defendant also claims error in the admission of evidence of the character of the wife of the defendant, not for the purpose of impeachment, but with a view of showing, on the part of the prosecution, that the deceased was upon the premises of the defendant, at the time of the homicide, for purposes other than felonious. This exception is founded upon an assumption that the woman called Banjo Nell was the wife of defendant. The fact is that whether she was his wife or not was a matter before the jury on the trial. At the time this evidence was objected to the prosecuting attorney stated that he expected to inquire into the pretended marriage, which had been testified to on the defense, and also that he expected to show the character of the alleged wife of the defendant, the house she kept, and the right of deceased to be there. We think for these purposes the evidence was properly admitted. The object of proving marriage on the part of the defense was to allow defendant the protection of the law in defending the sanctity of his house, but proof that his house was a house of prostitution, the sanctity of which had been destroyed by the common and public prostitution of his wife, would be competent evidence to rebut the presumption that the deceased was there with a felonious intent.

Error is claimed in the following instruction: "If the jury believe from the evidence that at the time defendant killed deceased, he (the defendant) was actuated by a desire so to do in revenge for some real or imagined injury the deceased had inflicted upon the wife of the defendant, if she were his wife, and not in the necessary defense of his (the defendant's) own person, or the person of his wife (if she were his wife), then

the defendant is guilty of murder, and the jury should so find."
It is difficult to conceive of any substantial objection to this
charge.    Revenge is defined to be a malicious injury inflicted in
return for an injury.    The law does not excuse one who kills
another for revenge.    This instruction is in accordance with
law, and properly given.

The remaining exceptions to the instructions involve the
same principles which are at issue in the exception to the rul-
·ing of the court in rejecting the declarations of defendant at the
time he sought the services of Deputy Sheriff Either, a short
time prior to the affray, and the conclusion of the court upon
that exception will dispose of the entire case.    The defendant,
by his counsel, at the trial excepted to the ruling of the district
court excluding the declarations of the defendant made to the
witness Either, deputy sheriff, when applying to such deputy
sheriff to arrest Hall, the deceased, for alleged acts and inten-
tions in regard to the woman called Banjo Nell, and her per-
sonal security in the house, claimed by the defendant as his own.
This application is shown by the testimony of Either to have
been made by the defendant on the day of, and but a short time
before, the killing.    And such refusal is alleged as error.

Declarations of a defendant in his own favor are *prima facie*
inadmissible, and if the declarations and statements of the de-
fendant made when trying to procure the arrest of Hall, were
admissible at all, it must be on the ground that they were part
of the *res gestae,* and as tending to show the condition of the
defendant's mind at the time of firing the fatal shot.    If de-
fendant had killed Hall with the first shot fired by him at or
near the door of the cabin, evidence of his declarations made
concerning Hall a few minutes before, accompanying his re-
quest to the officer, might have been properly admitted as tend-
ing to indicate the state of defendant's mind, for the purpose
of enabling the jury to fix the degree of the crime; but the evi-
dence clearly shows that the first shot did not strike the person
of Hall, and that the fatal shot was fired by the defendant while
Hall was running and endeavoring to escape, and when all ap-
pearance of danger, either to the defendant himself, his habita-
tion, or to any person residing or being therein, was past and
.over, if it had ever existed.    There is no disputing the evidence

on this point, for there is no conflict. Under these circumstances, when Hall had succeeded in wholly withdrawing himself from the immediate vicinity of the house, and that so palpably as to manifest his good faith, and to remove any just apprehension of danger from the defendant's mind, there can be nothing to mitigate, excuse, or justify the killing.

The judgment of the court below is therefore affirmed, and the cause remanded to the second district court in and for Alturas county, with directions to fix anew the time for executing its judgment.

Prickett, J., concurred.

BUCK, J., Dissenting.—While I concur in most of the opinion as read by the court, I am compelled to dissent from so much thereof as refers to the refusal of the court to admit the declarations of defendant at the time he called upon the deputy sheriff for protection a short time prior to the homicide. The record shows that defendant did not ask protection for himself, but for his habitation. Under section 25, page 324, of the Revised Laws of Idaho, a person has at least as much and possibly more protection of law in defending his property as he does in the protection of his person. The evidence admitted prior to the offer to prove the declarations referred to, tended to show that the deceased, Hall, had on several occasions prior to the homicide, during the three or four months prior thereto, been in the premises of defendant, overthrown the stove, broken the door, discharged his revolver, and done other acts of violence. One of these occasions had been four or five days prior to the shooting, and the last one on the day of the shooting, but just how long before does not appear. The sheriff or deputy had frequently been to the house to quiet the disturbance, had ejected the deceased, and deceased had violated his promise not to return to the premises. Within a short time before the homicide defendant had returned to his house, or his alleged house, found the stove overthrown, his wife or his alleged wife beaten. Within ten or fifteen minutes prior to the homicide he had sent for a physician, and he himself had gone to the sheriff, Either, and asked protection for his property. The doctor arrived soon after his return. Dr. Paterson

testifies that defendant seemed agitated about something—seemed exercised. This was from three to five minutes prior to the shooting.

Our statutes (page 323, section 17) provide that, to constitute murder in the first degree, there must be deliberation and premeditation. The doctrine of the *res gestae,* as stated by Bishop (Bishop's Criminal Procedure, sec. 1086), is that declarations are competent whenever near enough to the act, either before or after, to be probably prompted by the same motive.

The act of going to the sheriff and seeking protection from an officer of the law would seem to be prompted by the same motive as sending for the physician, and the same alleged motive of committing the homicide; that is, the protection of his property.

The whole transaction occurred within a half hour; and it is claimed that the declarations offered in evidence were not more than ten or fifteen minutes prior to the shooting. The objection to such declarations is that they are self-serving, and may have been made for the occasion. But, in the case at bar, the condition of the house, and the bruising of the wife, or alleged wife, were facts existing outside of the defendant's co-operation. In sending for a physician and in going for a peace officer he acted as any good citizen would act, and it is hard to presume fraud upon a defendant when all his acts may be accounted for in the same manner that we would account for the same acts by any other person. I cannot avoid the conclusion that his going for the sheriff was so connected with the protection of his property as to form a part of the *res gestae,* and the act, with the accompanying declarations, should have been admitted, not to justify the homicide, but as bearing upon the question of deliberation and premeditation necessary to constitute murder in the first degree. (*Mack v. Stone,* 48 Wis. 271, 4 N. W. 449; *State v. Keene,* 50 Mo. 358.)