(June 2, 1904.)

## STATE v. CREA.

[76 Pac. 1013.]

INFORMATION—INDORSING NAMES OF WITNESSES THEREON—JUROR—PEREMPTORY CHALLENGE—READING INDICTMENT TO JURY—IMPEACHMENT OF WITNESS—PHYSICAL STRENGTH OF DEFENDANT AND DECEASED—RETREAT—PREJUDICE OF WITNESS—EXHIBITS TAKEN TO JURYROOM—INSTRUCTIONS.

1. Under the provisions of section 2, Laws Fifth Session, 1889, page 125, requiring the prosecuting attorney to indorse on the information the names of all witnesses known to him at the time of filing the same, and it is sought to have the names of other witnesses indorsed on the information after the same has been filed, the court must be satisfied that the names of such witnesses were not known to the prosecuting attorney at the time the information was filed before such names are allowed to be indorsed thereon.

Points decided.

2. The court may, in its sound discretion, permit the prosecuting attorney to exercise his right of peremptory challenge of a juror at any time previous to the time the jury is sworn to try the case, the object and purpose being to secure a fair and impartial jury.

3. It is not error for the court to permit the witnesses to be sworn in a body.

4. Under the provisions of section 7855, Revised Statutes, a failure by the clerk to read the indictment or information and state the plea of the defendant to the jury is reversible error.

5. Under the provisions of section 6083, Revised Statutes, a witness may be impeached by evidence showing that he has made at other times statements inconsistent with his present testimony, and such statements must not only be relevant to the issue, but must be of matters of fact and not simply the opinion of the witness based on facts.

6. Where the defendant seeks to show the superior physical strength of the deceased when compared with his own, the evidence should be confined to the strength of each at the time of the homicide.

7. It was error to reject evidence tending to show that the defendant was behind the bar in a saloon and could not retreat out of reach of the deceased to escape his attack.

8. It is error to reject any evidence showing or tending to show the bias or prejudice of the witness either for or against the defendant.

9. On the direct examination of a witness called to testify to the reputation of the deceased as to peace and quietude, it is not proper, over the objection of the defendant, to inquire into the relation that existed between the witness and deceased.

10. Under the provisions of section 7902 of the Revised Statutes, it is error to permit, over the objection of the defendant, the jury to take to their juryroom any exhibits except such papers as are specified in said section.

11. It was error to instruct the jury that "if the evidence shows an unlawful killing, then in order for such unlawful killing to be manslaughter and not murder, there must have been shown by the evidence to have been a serious and highly provoking injury inflicted upon the person killing, . . . . or an attempt by the person killed to commit a serious injury on the person killing," as the language there used under the provisions of section 6570, Revised Statutes, would be justifiable homicide and not manslaughter.

(Syllabus by the court.)

APPEAL from District Court of Idaho County. Honorable E. C. Steele, Judge.

Defendant charged with murder; convicted of manslaughter. Reversed.

Miles S. Johnson and A. S. Hardy, for Appellant.

Before and after the commencement and during the progress of the trial the court permitted the prosecuting attorney to indorse the name of witnesses upon the information without an affidavit being filed, or any statement made that the said witnesses were unknown to the prosecuting attorney prior to the leave being asked, or any statement made as to what was expected to be proven by said witnesses. (Laws 1899, p. 125, sec. 2; *People v. Hall,* 48 Mich. 482, 42 Am. Rep. 477, 12 N. W. 665; *State v. Wilmbusse,* 8 Idaho, 608, 70 Pac. 849.) We submit that when a peremptory challenge is waived it is gone, and to allow the state to peremptorily challenge a juror after it has waived its last peremptory, is equivalent to giving the state six peremptories. "It is error to allow the state to peremptorily challenge a juror after he is tendered to the prisoner or to allow the state more peremptories than allowed by law." (*State v. Fuller,* 114 N. C. 885, 19 S. E. 797; *State v. Cameron* (Wis.), 2 Pinn. 496; *Gravely v. State,* 45 Neb. 878, 64 N. W. 452; *State v. Haines,* 36 S. C. 504, 15 S. E. 556; *Williams v. State,* 63 Ark. 527, 39 S. W. 709; *Wiggins v. Commonwealth,* 20 Ky. Law Rep. 908, 47 S. W. 1073; *Vance v. Richardson,* 110 Cal. 414, 42 Pac. 909.) The information was not read to the jury or the plea stated at any time during the progress of the trial. (See Rev. Stats., sec. 7855, subd. 1.) "If the indictment is for a felony the clerk *must* read it and state the plea of the defendant to the jury. In all other cases this formality may be dispensed with." "Criminal Code Practice, section 219, requiring the indictment to be read to the jury, is mandatory, and a total failure to comply with the requirement is reversible error." (*Farris v. Commonwealth* (Ky.), 63 S. W. 615; *Hendrickson v. Commonwealth,* 23 Ky. Law Rep. 1191, 64 S. W. 954; *State v. Chambers,* 9 Idaho, 673, 75 Pac. 275.) "It is plain that every statautory provision intended for the benefit of the accused confers a substantial right which cannot be disregarded without his consent." (*People v. McQuade,* 110

N. Y. 284, 18 N. E. 156, 1 L. R. A. 273.) It is a general
rule that a witness cannot be impeached on an immaterial or
collateral matter. (*People v. Tiley,* 84 Cal. 651, 24 Pac. 290;
*People v. Furtado,* 57 Cal. 345; *People v. McKeller,* 53 Cal.
65; *People v. Bell,* 53 Cal. 119; *People v. Dye,* 75 Cal. 108,
16 Pac. 537; *State v. Irwin,* 9 Idaho, 35, 71 Pac. 608; 2 9Am. &
Eng. Ency. of Law, p. 793; *People v. Collum,* 122 Cal. 186,
54 Pac. 589; *People v. Cole,* 127 Cal. 545, 59 Pac. 984;
*People v. Webb,* 70 Cal. 120, 11 Pac. 509; Wharton's Criminal
Evidence, 484.) Nor can the witness' former opinion in re-
lation to the matter in issue be shown unless it is a matter
upon which the opinion of a witness is admissible in evidence.
(29 Am. & Eng. Ency. of Law, p. 796; 1 Thompson on Trials,
sec. 493; *Commonwealth v. Mooney,* 110 Mass. 99; Wharton's
Criminal Evidence, 482.) The test as to whether a matter
is collateral within the meaning of the rule is this: that the
cross-examining party be entitled to prove it in support of his
case. (29 Am. & Eng. Ency. of Law, p. 794; Wharton's Crim-
inal Evidence, 484.) It is a matter of vital importance in a
plea of self-defense to show the comparative strength of the
two men. (21 Am. & Eng. Ency. of Law, 2d ed., p. 228.)
The testimony in this case showed that McLeod had been in
"boxing bouts," and was a very large and powerful man, and
an assault and battery by a powerful man with his fists upon
a weaker man might produce great bodily injury. (*State v.
Gray,* 43 Or. 446, 74 Pac. 929; *Rogers v. State,* 60 Ark. 76,
46 Am. St. Rep. 154, 29 S. W. 894, 31 L. R. A. 465.) It will
be seen that *papers* are the only exhibits which a jury are al-
lowed to take with them to their juryroom and the defendant's
discharge was the *only paper* in evidence. (Rev. Stats., sec.
7902.) Under the same statute the supreme court of Okla-
homa, in the case of *Hansing v. Territory,* 4 Okla. 443, 46 Pac.
509, held that it was error for the trial court to permit the
jury to take with them to the juryroom, and to have the same
in their possession while deliberating, the Winchester rifle used
by defendant, and the revolver used by his codefendant, and
the hat worn by deceased at the time of the affray, with the
bullet holes in it. "Serious bodily injury" is substantially

equivalent to "great bodily harm." (*Lawlor v. People,* 74 Ill. 228; *Rogers v. State,* 60 Ark. 76, 46 Am. St. Rep. 154, 29 S. W. 894, 31 L. R. A. 465.) This instruction also takes away from the defendant the right of acting upon appearances. (*State v. Gray,* 43 Or. 446, 74 Pac. 929; *State v. Rolla,* 21 Mont. 582, 55 Pac. 523; *State v. Sloan,* 22 Mont. 293, 56 Pac. 364.) It is held that when conflicting propositions of law are given upon a material point, one correct and the other incorrect, the judgment will be reversed. (*Axtell v. Northern Pac. Ry. Co.,* 9 Idaho, 392, 74 Pac. 1075; *Claire v. People,* 9 Colo. 122, 10 Pac. 799.)

Attorney General John A. Bagley, E. M. Griffith and Clay McNamee, for Respondent.

SULLIVAN, C. J.—The defendant was convicted of the crime of manslaughter. The information on which he was tried and convicted charged him with murder of one Thomas V. McLeod on the eleventh day of January, 1902, by shooting said deceased. The jury found the defendant guilty. of manslaughter, and the judgment of the court was that the defendant serve a term of four years and ten months in the state penitentiary at hard labor. Sixty-four errors are assigned and a new trial demanded. Counsel for appellant discuss first in their brief assignments of error numbers 2, 15, 26, 33 and 63. These all refer to the action of the court in ordering the names of certain witnesses to be indorsed upon the information. The record shows that the names of several witnesses were, on the motion of the prosecuting attorney, indorsed on the information, and that no reason was shown to the court why said names had not, and could not have, been indorsed thereon at the time said information was filed. Section 2 of an act entitled "An act to provide for prosecuting offenses on information, and to dispense with the calling of grand juries, except by order of the district judges," approved February 6, 1899, Session Laws of 1899, page 125, is as follows:

"All information shall be filed during term, in the court having jurisdiction of the offense specified therein, by the district attorney as informant; he shall subscribe his name there-

to and indorse thereon the names of the witnesses known to him at the time of filing the same; and at such time before the trial of any case as the court may by rule or otherwise prescribe, he shall indorse thereon the names of such other witnesses as shall then be known to him."

Said section provides, among other things, that the prosecuting attorney must indorse on the information the names of the witnesses known to him at the time of filing the same. It also provides that other names may be indorsed thereon as the court may by rule or otherwise prescribe. Under the latter provision, before the court allows the name of a witness to be indorsed thereon, some showing should be made by affidavit or otherwise why it was not indorsed thereon at the time of filing the information.

This court held in *State v. Wilmbusse,* 8 Idaho, 608, 70 Pac. 849, that the court did not err in permitting the names of witnesses unknown to the prosecuting attorney at the time the information was filed to be thereafter indorsed thereon. The showing in that case was made by affidavit. Where the prosecuting attorney seeks to have the names of witnesses indorsed on the information, after the same has been filed, before permitting the same the court must be satisfied that the names of such witnesses were not known to the prosecuting attorney at the time the information was filed. (*State v. Mc-Gann,* 8 Idaho, 40, 66 Pac. 823.)

Assignment No. 3 goes to the action of the court in impaneling the jury. It appears from the record that the state and the defendant had passed the jury for cause, the state having used four peremptory challenges. The court thereupon announced that it was the state's fifth and last peremptory challenge, whereupon counsel for the state announced that the state waived its fifth peremptory. A recess was then taken for ten minutes. After recess counsel for defendant stated that the defendant accepted the jury. The court thereupon stated as follows: "At the recess the state notified the court that it desired to withdraw the passing of the jury; the court for the purpose of informing the other side notified the defendant's attorneys that they would have the right to do this.

The court will let them withdraw waiving of challenge before steps are taken to . . . ."

Counsel for defendant thereupon excepted to the action of the court. Thereupon counsel for state further examined juror Pefley and peremptorily challenged him, which challenge was granted by the court. The above action of the court is assigned as error. It appears from the above record that at the time the state waived its fifth peremptory challenge, the court took a recess, and during that time the fact had been communicated to the court that the state desired to withdraw its waiver of its fifth peremptory challenge and that the judge informed counsel for the defendant of that fact. Immediately on the convening of the court after recess, counsel for the defendant stated that the defendant accepted the jury. We think on that state of facts it was not error for the court to permit counsel for the state to further examine the jury; for until the jury is accepted and sworn, we think it is in the sound discretion of the court to permit either the state or the defendant to further examine the jurors. The object of the court should be to get a fair and impartial jury, and it has been held by very respectable authority that the court has discretion to permit the withdrawal of an inadvertent acceptance by a party and the interposition of a challenge, and that if the disqualifications were not previously known, it was error to refuse to allow a challenge offered after acceptance if made before the juror is sworn. (Am. & Eng. Ency. of Law, 2d ed., p. 1160, and notes.)

Assignment No. 31 refers to a question asked witness Kinkaid, who was called to testify in behalf of the state, as to the character of the deceased for peace and quietude. On his direct examination he was asked the following question: "What, if any, relation existed between him and you as a miner as to employment?" To which question the defendant objected on the ground that it was incompetent, irrelevant and immaterial and not in rebuttal. The objection was overruled by the court. While that question would have been proper on cross-examination, it was not competent on the direct examination. It was sufficient on direct examination to ask the witness if he knew

the reputation of the deceased for peace and quietude; if his answer was "yes," then would follow the question as to what it was. On cross-examination the relations existing between the witness and the deceased might be gone into, but on the direct examination that could not properly be done.

It is not necessary for us to pass upon the fourth error assigned. The question there involved will not, in all probability, be raised upon a retrial in this case.

The fifth error assigned is that the court erred in permitting the witnesses to be sworn in a body. There is nothing in this contention, as it is not shown that anyone testified in the case who had not been sworn.

It appears from the record that the information was not read to the jury and the plea of the defendant stated to them at the opening of the trial, and that omission is assigned as error. Section 7855 of the Revised Statutes provides that "The jury having been impaneled and sworn, the trial *must* proceed in the following order: 1. If the indictment is for a felony, the clerk must read it and state the plea of the defendant to the jury. . . . . 2. The district attorney or other counsel for the people must open the cause and offer the evidence in support of the indictment."

By the provisions of that section the legislature has laid down the order of trial in a criminal case, and it provides that after the jury has been impaneled, if the indictment be for a felony the clerk must read it to the jury and state the plea of the defendant to them. Said provisions are too plain and obvious to require construction; and this court held in *State v. Chambers,* 9 Idaho, 673, 75 Pac. 275, that said provisions were mandatory, and the omission to read the information and state the plea of the defendant to the jury was reversible error. The omission to read the information and state the plea of the defendant to the jury was gross carelessness on the part of the prosecuting officer, as a new trial must be granted and much additional costs will be incurred in a retrial of this action.

Witness McKinley was asked the following question: "State what was his condition, dead or alive?" and answered, "Dead, I presume." Counsel for defendant moved to strike out the

answer, which was denied by the court. That action of the court was not error, as there is ample evidence in the record to show that the deceased was dead.

The admission in evidence of the pistol claimed to have been used by the defendant is assigned as error. It is contended that it was not properly identified, and for that reason it was error to admit it. We think said pistol was sufficiently identified and was properly admitted in evidence.

The asking of the following question to witness Bates is assigned as error: "Did you tend bar until the saloon was closed by the county commissioners?" It is contended that said question is wholly incompetent and was asked for the sole purpose of prejudicing the defendant. We do not think that was a legitimate examination of the witness, for it is not shown that said saloon was closed by an order of the county commissioners, and if so, when it was closed, or that that fact had any relation to this case whatever.

Assignments Nos. 23, 24 and 36 are in regard to the testimony of witness Tilley. Said witness testified on his direct examination that he was on the outside of the saloon and saw a part of the difficulty through a glass door, and the court, over the objection of the defendant, permitted the prosecuting attorney to ask said witness upon cross-examination the following two questions: "I will ask you, Mr. Tilley, this question, if you did not thirty minutes after the killing took place go to the barber-shop of Hamerick & Daly, in Grangeville, Idaho, you and Hamerick and Daly being present, and make this statement: That you had witnessed this shooting and the shooting was as cold-blooded a murder as could be, or words to that effect. I will ask you if in this same conversation, the same parties being present, did you not at that time state that you had seen the killing of McLeod, and that said killing was as cold-blooded as you ever saw or could be, and then state you came damn near being a witness in this case."

It is contended by counsel for the defendant that said questions did not go to disprove anything said by Tilley on the witness-stand or show that he had made contrary statements, and that if said witness did make said statements, they were merely

his opinion, and that said questions were asked solely for the purpose of interjecting into the case matters that would prejudice the jury against the defendant.

It is provided, among other things, by section 6083, Revised Statutes, that a witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony.

In *Commonwealth v. Mooney*, 110 Mass. 99, the court held on the trial, on an indictment, the defendant could not introduce evidence of opinions expressed as to his innocence by a witness who had testified to circumstances tending to connect him with the crime. In 29 American and English Encyclopedia of Law, first edition, page 796, the author says: "The statement of a witness upon which he may be impeached must not only be relevant to the issue, it must also be of a matter of fact, and not merely a former opinion of the witness in relation to the matter at issue which is inconsistent with the conclusion which the facts he testified to tend to establish, unless the matter in question be one upon which the opinion of the witness is admissible in evidence." And it is laid down in Wharton's Criminal Evidence, sixth edition, section 482, that a witness after testifying to criminating facts against a defendant, cannot be asked whether he had not previously said that in his opinion the defendant was not guilty. The statement which it is intended to contradict must involve facts in evidence. The first part of the questions above referred to indicates that the witness had expressed his opinion that the killing was a cold-blooded murder, and the witness was not called upon to testify as to his opinion, but as to the facts what he saw or claimed to have seen; and under the well-established rule above stated, it was error to admit in evidence the opinion of this witness. That part of the question in which it was intimated the witness had said that he came near being a witness in this case would have been proper, provided the witness meant by that statement that he had not seen the affray. The witness testified that he saw a part of the difficulty between the deceased and the defendant. As there is no dispute but what the witness did see a part of

the difficulty, we think it was error to admit in evidence said statements claimed to have been made by the witness.

Assignments Nos. 25 and 30 refer to the questions asked Doctor Bibby and Captain Hartman as to the physical strength of the defendant and comparative strength of the deceased. It appears from the record that counsel for the defendant undertook to show the physical condition of their client some two years prior to the time the homicide occurred, and the court properly refused to admit such evidence, and confined the evidence to the physical condition and comparative strength of the defendant and the deceased at the time of the homicide. Counsel for the defendant earnestly sought to introduce evidence showing the physical condition of the defendant when he went into the army and his condition when he returned from the army. This evidence was properly rejected. The correct rule in such cases is that the strength and physical condition of the deceased and the defendant at the time of the homicide may be shown. There was no error in the action of the court in this matter.

Assignments Nos. 27, 28, 29, 34 and 35 are discussed together by defendant's counsel, and involve the offer of the defendant to prove by the witness Turner that he could stand in front of the bar from whence the deceased was killed and reach over the bar and take an object off the back of the bar. This evidence was offered for the purpose of showing that the defendant being behind the bar could not retreat out of the reach of the deceased or far enough back to escape his attack. We think it was error to exclude that testimony.

It is also contended that it was error to permit said witness Turner to answer the following question on cross-examination : "A short time after the killing that evening didn't you say : 'Warney (meaning Warren Cook), Dick (meaning the defendant) is a damn good fellow and we must go and fix this thing up for him,' or words to that effect?" This was proper cross-examination for the purpose of testing the credibility of the witness and the interest he was taking in the defendant, and was properly admitted.

The state called witness Fick in rebuttal to testify as to the general reputation of the deceased for peace and quietude, and

upon cross-examination was asked the following question: "Did you ever hear of his having a fight with Jake Lambert in Vincent's saloon?" Which question was objected to by counsel for the state and overruled by the court. Witness answered that he had not, and then the question was asked: "What did you hear about it?" Which question was objected to and the objection sustained by the court. We fail to understand how error could be committed in not permitting the witness to answer that question as long as the witness had testified that he never had heard that the deceased had had a fight with Lambert. There was no error in sustaining said objection. While great latitude should be allowed in the cross-examination of a witness who testifies as to the reputation of a person, when he is asked in regard to a particular event and swears that he never heard of it, it is not error to overrule a question as to what he had heard about it.

Assignment No. 54 is in regard to the jury taking to the juryroom the exhibits introduced in evidence, consisting of a hat, coat, vest, blood-stained undershirt and overshirt, a strap, piece of a broken Tom and Jerry mug, revolver, and the defendant's discharge from the army.

It appears from the record that after the jury had retired to consider of their verdict they called for a number of the exhibits introduced on the trial. The court called the attention of the respective counsel to that fact and suggested that all of the exhibits be sent to the jury. A formal objection was made to the exhibits being sent to the jury by counsel for the defendant. The court overruled the objection and sent the exhibits to the jury. The only section of our statute in regard to exhibits in criminal cases is section 7902 of the Revised Statutes, and is as follows: "Upon retiring for deliberation, the jury may take with them all papers (except depositions) which have been received as evidence in the cause, or copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. They may also take with them the written instructions given, and notes of the testimony or other proceedings on the trial, taken by themselves or any of them, but none taken by any other person."

Counsel contends under the provisions of said section that papers are the only exhibits which a jury is allowed to take to their juryroom, and in support of that contention cites *Hansing v. Territory,* 4 Okla. 443, 46 Pac. 509. In that case the court, over the objection of counsel for the defendant, permitted the jury to take with them certain exhibits introduced on the trial, to wit, a Winchester rifle, revolver and the hat worn by the deceased. Section 5237 of the Oklahoma, Statutes as quoted in that opinion, as far as quoted, is like our section 7902 above referred to. The court in that case said: "It is hardly necessary to quote authority to show that the language of this article does not embrace such articles as were admitted by the court to the juryroom in this case. Those articles were certainly not 'copies' of any 'public record' or 'private documents.' Neither are they 'papers' in any sense of the term. Such a construction would do violence to language. We are further of the opinion that in the absence of statutory authority, the trial court could not legally, over the objection of defendant, permit such articles to be taken to the juryroom to be experimented with by the jury in the defendant's absence."

The supreme court of Washington, under a statute similar to ours, in the case of *Jack v. Territory,* 2 Wash. Ter. 101, 3 Pac. 832, held that the jury might take to their room the exhibits consisting of the hat and shirt. And in *State v. Webster,* 21 Wash. 63, 57 Pac. 361, the court held that exhibits properly introduced in evidence and explanatory of the evidence of witnesses might be taken to the juryroom. And in *Bell v. State,* 32 Tex. Cr. Rep. 436, 24 S. W. 418, where the clothing of the deceased which had been introduced in evidence and carried by the jury to their juryroom without objection on the part of the defendant, was not error. (See, also, 17 Am. & Eng. Ency. of Law, 2d ed., pp. 1240, 1247; 12 Ency. of Pl. & Pr., p. 589.)

In the case of *People v. Cochran,* 61 Cal. 548, a request was made by the attorney for the defendant to permit the jury upon its retiring for deliberation to take with them a diagram which had been used in the trial of the case in the examination of some of the witnesses; which request was denied by the court.

It was held not an absolute right of the prosecution or defense to have the papers or instruments sent with the jury. The question as to the right of the jury to take other exhibits than the papers introduced in evidence and the instructions of the court was not involved in that case.

If the legislature, in passing section 7902, had intended to permit the jury to take all kinds of exhibits with them to the juryroom when considering of their verdict, it would have been an easy matter to have clearly expressed such intentions. The language of said section clearly indicates that it was the intention to permit the jury to take with them all papers, except depositions, which had been received as evidence in the case, and also copies of such public records or private documents as ought, in the opinion of the court, to be taken from the persons having them in possession. We are clearly of the opinion that any other exhibits received as evidence in the trial of the cause should not be sent to the juryroom, over the objection of the defendant; therefore the court erred in sending the exhibits above mentioned to the juryroom for their inspection by the jury.

Assignment No. 38 involves that instruction of the court containing the following language, to wit: "If the evidence shows an unlawful killing, then in order for such unlawful killing to be manslaughter and not murder there must have been shown by the evidence to have been a serious and highly provoking injury inflicted upon the person killing, . . . . or an attempt by the person killed to commit a serious injury on the person killing."

It is contended by counsel for the appellant that the language there used is equivalent to saying that anyone, who, while resisting an attempt to commit a serious injury on his person, kills another is guilty of manslaughter, and contend under the law that such homicide would be justifiable and not manslaughter. Justifiable homicide is defined by section 6570, Revised Statutes, as follows: "Homicide is also justifiable when committed by any person, in either of the following cases: 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person.

. . . . 3. When committed in the lawful defense of such persons. . . . . When there is reasonable ground to apprehend a design to commit . . . . some great bodily injury, and imminent danger of such design being accomplished."

Said instruction contains the word "serious" while the statute uses the word "great." There is certainly a distinction between the meaning of these two words, but the vice of the instruction is in charging that one who kills another while resisting an attempt to commit a serious injury on his person is guilty of manslaughter, when, as a matter of fact, such killing would be justifiable. It was error to give that instruction.

The instruction requested by assignments Nos. 50, 51 and 54 are covered by the instructions given by the court, and there was no error in the court's refusing to give them. The assignments above referred to include all errors discussed in appellant's brief.

For the reasons herein given a new trial should be granted and the cause remanded, with instructions to grant a new trial to the defendant.

Stockslager, J., concurs.

Ailshie, J., did not sit at the hearing and took no part in the decision as he had appeared in the case as attorney for the defendant.