(February 7, 1914.)

## STATE, Respondent, v. CHARLES C. SMITH, Appellant..

[138 Pac. 1107.]

MANSLAUGHTER—SUFFICIENCY OF INFORMATION—STATEMENT OF ACTS CONSTITUTING OFFENSE—CONSTRUCTION OF STATUTE—HOMICIDE BY STARVING—EXPERT PROFESSIONAL TESTIMONY—WITNESS AND DEFENDANT OF DIFFERENT SCHOOLS.

1. Under the provisions of the statutes of this state, secs. 7677, 7678, and 7679, Rev. Codes, it is necessary that an information be direct and certain as to the offense charged, and that it contain "a statement of the acts constituting the offense in ordinary and concise language," and under the requirements of these statutes, an information which merely names the offense without in any way stating how it was committed or the acts committed which it is claimed consummated or culminated in the commission of the offense, is insufficient and will not serve to put the defendant upon his trial.

2. Under the statute of this state which requires an information to contain "a statement of the acts constituting the offense," an information which merely states that the defendant "did unlawfully and feloniously kill one Clara F. Foy," is defective and insufficient to comply with the statute because of its failure to state how the killing was consummated; that is, the means by which the death was accomplished.

3. Where the state intends to introduce evidence to prove that the defendant committed manslaughter by starving a patient under his care, an information charging him with manslaughter is not sufficient if it fails to state the means or method employed in committing the homicide.

4. It is a well-established rule of law in this state that a criminal pleading must be liberally construed, and that if the facts constituting the crime can be gathered therefrom by a person of ordinary intelligence, they will be sustained as a substantial compliance with the statute.

5. The professional conduct and treatment of a physician of one particular school when called in question in a court of justice should be tested by the rules of treatment of his school and not by those of other schools, and a physician or surgeon or one administering treatment is bound to exercise such reasonable care and skill as is ordinarily possessed and exercised by physicians and surgeons in

good standing of the same system or school of practice or treatment in the locality and community of his practice, having due regard to the advanced state of the school or science of treatment at the time.

6. When a patient selects any one of the many schools of medical treatment or healing to serve him, he thereby accepts and adopts the kind of treatment common to that school or class, and the care, skill and diligence with which he is treated, when that becomes a question in a court of justice, should be tested by the evidence of those who are trained or skilled in that school or class.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edw. Walters, Judge.

Prosecution for manslaughter. Judgment of conviction. Defendant appeals. *Reversed.* ·

C. H. Edwards, Daniel McLaughlin and F. C. White, for Appellant.

Nowhere in the information will there be found "A statement of the acts constituting the offense in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended," and "the particular circumstances of the offense charged, when they are necessary to constitute a complete offense," in accordance with secs. 7677, 7678 and 7679, Rev. Codes. (*State v. Sly,* 11 Ida. 110, 80 Pac. 1125; *People v. King,* 27 Cal. 507, 87 Am. Dec. 95; *People v. Cronin,* 34 Cal. 191; *People v. Walters,* 1 Ida. 271; *Territory v. Evans,* 2 Ida. 425, 17 Pac. 139; *State v. Ellington,* 4 Ida. 529, 43 Pac. 60; *State v. Alcorn,* 7 Ida. 599, 97 Am. St. 252, 64 Pac. 1014; *State v. Keller,* 8 Ida. 699, 70 Pac. 1051; *State v. Shuff,* 9 Ida. 115, 72 Pac. 664.)

"The offense for which the respondent was put on trial originated in the statute defining it, and could not have come within any of the descriptions of manslaughter at common law. Nothing could inform him of this statutory charge except allegations conforming to the statute. Without them, he was liable to be surprised at the trial and could not be expected to prepare for it." (*State v. McFadden,* 48 Wash. 259, 93 Pac. 414, 14 L. R. A., N. S., 1140; *People v. Olmstead,* 30 Mich. 431;

*Titus v. State,* 49 N. J. L. 36, 7 Atl. 621, 7 Am. Cr. Rep. 254;
*State v. Lowe,* 66 Minn. 296, 68 N. W. 1094; *State v. Costello,*
62 Conn. 128, 25 Atl. 477, cited in 11 Am. Cr. Rep. 517;
*Fletcher v. State,* 2 Okl. Cr. 300, 101 Pac. 599, 23 L. R. A.,
N. S., 581; *Ehrlick v. Commonwealth,* 125 Ky. 742, 128 Am.
St. 269, 102 S. W. 289, 10 L. R. A., N. S., 995; *Armour Pack-
ing Co. v. United States,* 153 Fed. 1, 82 C. C. A. 135, 14
L. R. A., N. S., 400; *Evans v. United States,* 153 U. S. 584,
14 Sup. Ct. 934, 38 L. ed. 830, 9 Am. Cr. Rep. 668; *People
v. Neil,* 91 Cal. 465, 27 Pac. 760; *People v. McKenna,* 81 Cal.
158, 22 Pac. 488; Wharton on Homicide, 3d ed., p. 881.)

The court erred in permitting the indorsement of a number
of new witnesses' names on the information after the filing
thereof and without a sufficient showing.    (*State v. Barber,*
13 Ida. 65, 88 Pac. 418.)

Instruction No. 15 does not declare the law, for the reason
that it recites, "must have both such knowledge and skill as
are ordinarily possessed and exercised by physicians and those
professing to understand the healing art and practicing in the
same vicinity." The defendant is not bound by any such
rule or test of his knowledge or skill, but is bound by the ordi-
nary knowledge and skill of osteopathic physicians practicing
in the same vicinity or vicinities of the same kind in similar
localities.    (*Force v. Gregory,* 63 Conn. 167, 38 Am. St. 371,
27 Atl. 1116, 22 L. R. A. 343; *Bowman v. Woods,* 1 Greene
(Iowa), 441; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593;
*Martin v. Courtney,* 75 Minn. 255, 77 N. W. 813; *Corsi v.
Maretzek,* 4 E. D. Smith (N. Y.), 1; *Williams v. Poppleton,* 3
Or. 139; *Nelson v. Harrington,* 72 Wis. 591, 7 Am. St. 900,
40 N. W. 228, 1 L. R. A. 719.)

The evidence is insufficient to sustain a conviction in that
it fails to show that the defendant was engaged in any unlaw-
ful act, or that he ever treated the deceased without due cau-
tion or circumspection, or that the advice given to deceased
by the defendant was such as would be the direct and actual
cause of her death.    (*Johnson v. State,* 66 Ohio St. 59, 90 Am.
St. 564, 63 N. E. 607, 61 L. R. A. 277; *People v. Beardsley,*
150 Mich. 206, 121 Am. St. 617, 113 N. W. 1128, 13 Ann. Cas.

39, 13 L. R. A., N. S., 1020; *Thomas v. People,* 2 Colo. App. 513, 31 Pac. 349.)

'J. H. Peterson, Attorney General, J. J. Guheen and T. C. Coffin, Assistants to Attorney General, and W. L. Harvey, for Respondent.

The means of the commission of a homicide need not be charged under statutes requiring the indictment to contain a statement of the facts constituting the offense in plain and concise language. There is a clear distinction between "the facts constituting an offense" and "the circumstances surrounding the commission of a crime." 'The information is sufficient under the rulings of this court. (*People v. King,* 27 Cal. 507, 87 Am. Dec. 95; *People v. Cronin,* 34 Cal. 191; *People v. Murphy,* 39 Cal. 52; *People v. Davis,* 73 Cal. 355, 15 Pac. 8; *People v. Hyndman,* 99 Cal. 1, 33 Pac. 782; *State v. Collyer,* 17 Nev. 275, 30 Pac. 891; *People v. Butler,* 1 Ida. 231; *State v. Rathbone,* 8 Ida. 161, 67 Pac. 186; *State v. Sly,* 11 Ida. 110, 80 Pac. 1125; *State v. Squires,* 15 Ida. 545, 98 Pac. 413; *State v. Caldwell,* 21 Ida. 663, 123 Pac. 299; *Matter of McLeod,* 23 Ida. 257, 128 Pac. 1106.)

When the public prosecutor seeks to indorse the names of additional witnesses upon the information after the same is filed, it is not necessary that he should set forth in his affidavit where and how he learned of the materiality of the testimony they would give. It is sufficient if the showing made satisfy the trial court that the application is made by the prosecutor in good faith. (*State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849; *State v. Crea,* 10 Ida. 88, 76 Pac. 1013; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82; *State v. Allen,* 20 Ida. 263, 117 Pac. 849; *State v. Silva,* 21 Ida. 247, 120 Pac. 835.)

As a general rule, expert witnesses, in cases of malpractice, must be members of the same school of medicine as the defendant. The rule does not apply, however, unless it is shown that the different schools of medicine hold different views as to the diagnosis and treatments for the particular ailments under consideration, and the proof of the different views held

by the different schools is a matter of defense.    (*State v. Hazzard* (Wash.), 134 Pac. 514; *Force v. Gregory,* 63 Conn. 167, 38 Am. St. 371, 27 Atl. 1116, 22 L. R. A. 343; *Martin v. Courtney,* 75 Minn. 255, 77 N. W. 813; *Nelson v. Harrington,* 72 Wis. 591, 7 Am. St. 900, 40 N. W. 228, 1 L. R. A. 719; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593.)

A physician owes to his patient the duty to use that reasonable degree of learning, skill and experience which is ordinarily possessed by others in his profession.    (*Gillett v. Tucker,* 93 Am. St. 639, and note, 65 N. E. 865; 30 Cyc. 1570.)

AILSHIE, C. J.—The defendant was charged by information filed by the prosecuting attorney of Elmore county with the crime of manslaughter.    The information is as follows:

"W. L. Harvey, Esq., prosecuting attorney in and for the county of Elmore, and state of Idaho, for and in behalf of the state of Idaho, comes into said court in the year one thousand nine hundred and thirteen, and gives the court here to understand and be informed that Charles C. Smith, prior to the filing of this information, waived a preliminary examination before P. H. Gray, probate judge in and for said county and state, and was there held to answer to the said district court for the crime of manslaughter; that on or about the 9th day of February, 1913, at King Hill, in the county of Elmore, in the state of Idaho, the aforesaid Charles C. Smith then and there being, committed the crime of manslaughter in manner as follows, to wit:

"That the said defendant, Charles C. Smith, at the time and place aforesaid, did unlawfully and feloniously kill one Clara F. Foy, a human being; contrary to the form of the statute in such case made and provided."

A demurrer to the information was filed and by the court overruled.    The case thereupon proceeded to trial upon the plea of not guilty.    Defendant was found guilty of "involuntary manslaughter" and sentenced to a term of imprisonment of not less than six months nor more than ten years in the state penitentiary.    He has prosecuted this appeal from the judgment.

The first question presented is the sufficiency of the information. It is argued by counsel for appellant that the information in this case does not comply with the requirements of the statute and fails to state a public offense. If this contention is well taken, it would require a reversal of the judgment. Chap. 2, Title 5, Part 2 of the Criminal Code prescribes the rules of pleading in criminal cases. Sec. 7677 provides that the indictment or information must contain the title of the action, specifying the name of the court to which the indictment or information is presented and the names of the parties, and that it shall contain "a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Sec. 7678 prescribes the form of indictment or information, and in the latter part thereof it requires that the state shall "set forth the act or omission charged as an offense," while sec. 7679 provides that the information "must be direct and certain as it regards, (1), the party charged; (2) the offense charged; and (3) the particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

It will be observed from the foregoing provisions of the statute that the statute of this state requires an information or accusation against a person to be direct and certain as to the *offense charged,* that is, as to the particular name, character or grade of crime that the party is accused with, and it also requires that it be direct and certain as to the "act or omission" which it is alleged constitutes the crime. In other words, to simply charge that a person committed murder or larceny merely charges the name of the offense. That alone is not sufficient. It is necessary to in some way inform the party accused as to how it is claimed he committed murder, whether by shooting, by striking a blow, by drowning, poisoning, or in some other manner perpetrating the offense; or, if he committed larceny, what property he took.

In the case at bar, it will be discovered at a glance that the prosecuting attorney did not pretend to state *how or in what manner, or by what means* the appellant committed the crime

of manslaughter. He simply charges that he "did unlawfully and feloniously kill one Clara F. Foy." This is sufficient as far as it goes. It charges the defendant with the commission of a homicide. The statute requires more. It requires "a statement of the acts constituting the offense in ordinary and concise language." No one would suppose from reading this information that the prosecuting attorney expected to convict the defendant upon the charge of having had a patient under his care and attention and having starved that patient to death in course of a medical treatment. No one would surmise from this information whether the prosecutor intended to show that death *by starving* was the result of an experiment or an intention to take the life of Clara Foy, or was the result of *ignorance* and *criminal carelessness*. We find, however, from the record in the case that, as a matter of fact, the prosecution attempted to establish the defendant's guilt by proving that he undertook the treatment of one Clara F. Foy for some real or imaginary ailment and that he sought to effect a cure by having the patient fast, and that this treatment was kept up too long and the patient finally died. In other words, he has been convicted of criminal negligence and ignorance. To our minds, this case well illustrates the purpose and meaning of the statute. A defendant before being placed upon trial for his life or liberty is entitled to be apprised not only of the *name of the offense* with which he is charged, but, in general terms, of the *manner* in which he is charged with having committed the offense. The statute is plain and explicit in this respect.

This court has on many occasions held that criminal pleadings must be construed with that same liberality which is allowed in civil cases and that "if the substantial facts necessary to constitute the crime charged appear in the indictment or information, it will be held sufficient." (*State v. Sly,* 11 Ida. 110, 80 Pac. 1125; *State v. Squires,* 15 Ida. 545, 98 Pac. 413; *Corker v. Pence,* 12 Ida. 152, 85 Pac. 388.) On the other hand, the court has no power or authority to sweep aside the statute and entertain any pretended criminal charge which falls short of the requirements of the law. This court has

uniformly exercised a great deal of liberality in the construction of indictments and informations, and it has been generally held in this state that an indictment or information in the language of the statute is sufficient. However, the court has never gone to the extent of holding that merely to name the offense is a compliance with subd. 2 of sec. 7677, which requires a "statement of the acts constituting the offense." So far as we are apprised, in every case that has been passed upon by this court, the indictment or information has contained some statement or other of the acts which constituted the offense.

In *State v. Sly, supra,* the information charged the crime of murder, and that the crime was committed by *shooting* the deceased. In *State v. Squires, supra,* the information charged murder and that the crime was committed by *striking, beating, wounding and ill-treating* the body of the deceased. And in every other case, so far as we are aware, the indictment or information has contained some language which apprised the defendant of "the act or omission charged" against him.

Several cases have been called to our attention wherein the accused was charged with the crime of murder or manslaughter committed by starving a patient, and in each case the indictment has set forth the manner in which the offense was committed and the facts and circumstances surrounding the same. For illustration, see *State v. Power,* 24 Wash. 34, 63 Pac. 1112, 63 L. R. A. 902; *State v. McFadden,* 48 Wash. 259, 93 Pac. 414, 14 L. R. A., N. S., 1140; *State v. Hazzard* (Wash.), 134 Pac. 514. The state of Michigan has a more liberal statute on the matter of criminal pleadings than we have in Idaho, and yet in *People v. Olmstead,* 30 Mich. 431, 1 Am. Cr. Rep. 301, the court said:

"But where the offense of manslaughter was involuntary homicide, and involved no assault, but arose out of some negligence or fault from which death was a consequential result, and sometimes not a speedy one, the ordinary forms were deficient and the indictment had to be framed upon the peculiar facts, and could convey no adequate information without this. (See 2 Bishop's Crim. Proc., sec. 538.) The

offense for which the respondent in this case was put on trial, originated in the statute defining it, and could not have come within any of the descriptions of manslaughter at common law. . . . . Nothing could inform him of this statutory charge, except allegations conforming to the statute. These, we think, he was entitled to have spread out upon the accusation. Without them he was liable to be surprised at the trial, and could not be expected to prepare for it.''

To the same effect, see *Titus v. State,* 49 N. J. L. 36, 7 Atl. 621, 7 Am. Cr. Rep. 254; *State v. Lowe,* 66 Minn. 296, 68 N. W. 1094; *State v. Costello,* 62 Conn. 128, 25 Atl. 477; *Fletcher v. State,* 2 Okl. Cr. 300, 101 Pac. 599, 23 L. R. A., N. S., 581.

It is next contended that the court erred in permitting the prosecuting attorney to indorse the names of witnesses on the information after the filing thereof and before going to trial. We do not think the court committed any error in this respect. This court has expressed its views as to the duty of the prosecutor and the court under such circumstances in the cases of *State v. Barber,* 13 Ida. 65, 88 Pac. 418; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82; *State v. Crea,* 10 Ida. 88, 76 Pac. 1013; *State v. Allen,* 20 Ida. 263, 117 Pac. 849; *State v. Silva,* 21 Ida. 247, 120 Pac. 835.

It is next contended that the court erred in allowing certain physicians to testify as expert witnesses as to whether or not the treatment employed by the accused was such as a physician of ordinary skill exercising due care would employ in such a case. The particular question which was propounded to one of the doctors and to which exception is taken was as follows:

''Q. I will ask you, Doctor, would the means employed in the treatment of the deceased, Miss Clara Foy, as narrated and stated to you by the defendant, Dr. Smith, as the treatment he employed, be such as a physician in this community, meaning thereby Elmore county, having competent skill and employing due care and attention, would have used in treating the case?''

It was clearly erroneous for the court to permit physicians of a different school to testify as experts in a case of this kind as to the correctness and professional skill of the treatment administered. It appears that appellant herein was a duly licensed osteopathic physician and that he professed to treat patients under the methods and practices of that school and not in accordance with what is known as the regular or allopathic school or any other school for the treatment of diseases. It seems to be a sound and reasonable rule and well established by the authorities that the treatment of a physician of one particular school is to be tested by the general principles and practices of his school and not by those of other schools, and that a physician or surgeon is bound to exercise such reasonable care and skill as is possessed and exercised by physicians and surgeons generally in good standing of the same system or school of practice or treatment in the locality and community of his practice, having due regard to the advanced state of the school or science of treatment at the time of such treatment. (*Force v. Gregory,* 63 Conn. 167, 38 Am. St. 371, 27 Atl. 1116, 22 L. R. A. 343; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593; *Nelson v. Harrington,* 72 Wis. 591, 7 Am. St. 900, 40 N. W. 228, 1 L. R. A. 719.) These are times of advanced science and liberal thought, when every person may think and act for himself. Every community has its multitude of beliefs and modes of treatment of diseases and human ailments, and every citizen is absolutely free to adopt, believe or employ anyone he pleases. If the results are not what he would wish or the rest of the community think they ought to be, he can nevertheless not be hauled into court and have his method of treatment and his school of thought tested by the disciples or experts of some other school or belief. It would be disastrous to an allopath to try him by the tests the homeopath, the osteopath, the eclectic or mental science healer would apply, and it would likewise be dangerous to the osteopath to require of him an observance of the rules of treatment applied by any of the others enumerated. When a patient selects any one of the many schools of treatment and healing to serve him, he thereby accepts and adopts the

kind of treatment common to that school or class, and the care, skill and diligence with which he is treated, when questioned in a court of justice, should be tested by the evidence of those who are trained or skilled in that school or class.

Other objections are urged to the admission of certain evidence and also to the ruling of the court in refusing to allow certain questions to be answered. We think, however, that what has been heretofore said with reference to the admission of evidence is sufficient to cover and dispose of the other errors assigned on the admission and rejection of evidence.

It is clear to us that the appellant has not been tried in accordance with the law of the land. It is also apparent that the element of prejudice and passion has entered largely into this case. It is necessary, therefore, in the interest of justice and fair dealing, that the judgment be reversed, and it is so ordered, and the cause is remanded for a new trial.

Sullivan, and Stewart, JJ., concur.