## FEIGE *v.* STATE.

### Opinion delivered April 30, 1917.

1. HOMICIDE—INVOLUNTARY MANSLAUGHTER.—Involuntary manslaughter is an involuntary killing, done without design, intention or purpose of killing, but in the commission of some unlawful act, or in the improper performance of some lawful act.

2. HOMICIDE—ACTS OF PHYSICIAN—INVOLUNTARY MANSLAUGHTER.—A physician is not criminally liable for a mere mistake of judgment in the selection and application of remedies resulting in the death of his patient; and whether one who assumes to practice medicine is grossly ignorant of the art or the selection of remedies or their application, or inapplication, or whether they are rashly applied, are all questions to be determined from the evidence.

3. EVIDENCE—TEXT BOOKS AS ORIGINAL EVIDENCE.—Excerpts from medical books cannot be read to the jury as original and affirmative evidence.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; reversed.

*O. H. Sumpter,* for appellant.

1. The court erred in instructing the jury and in refusing the instructions requested by the defendant. A

mere mistake or error of judgment, or a mere want of skill, where there is not gross negligence or ignorance, will not render a practitioner liable. 21 Cyc. 769; 38 Ark. 605. The first, second, third and fourth were error.

2. The fifth, as to the punishment, was error. Kirby's Dig., § 2408. The jury should have been left to fix the penalty. 12 Cyc. 611, 641-2.

3. It was error to refuse defendant's requests Nos. 1 to 10. 12 Cyc. 384-5, 621-2; 59 Ark. 431; 64 Mich. 693; 8 Am. St. 863; 21 Cyc. 769; 38 Ark. 605.

4. The court erred in admitting and excluding evidence. Extracts from standard medical works are admissible. 3 McFadden Physical Culture, 1224-8, 1237-9, 1243, 1270, 1275, 1283, etc, 1298-9, 1315-17.

5. The evidence was insufficient and the verdict contrary to the evidence. 3 Greenl., Ev., § § 129-9; 38 Ark. 605; Stewart Legal Medicine, p. 292-3, 57, 263-4.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The instructions given were not erroneous. Kirby's Digest, § 1779, 5243; 64 Ark. 247; 69 *Id.* 558; 16 *Id.* 628; 78 *Id.* 132; 85 *Id.* 179; 82 *Id.* 64; 78 *Id.* 147. The remarks of the prosecuting attorney were not improper. 95 Ark. 321; 58 *Id.* 353; *Ib.* 473; 94 *Id.* 514. Nor were they prejudicial, and the court promptly cured any possible prejudice.

2. It was not error to refuse to permit to be read extracts from McFadden's Work on Physical Culture. It is not a recognized authority. 110 Ill. 219; 67 Cal. 13; 149 Mass. 68; 84 Mich. 676; 60 Miss. 460; 7 R. I. 336; 44 S. W. 513; 38 Md. 15; 77 N. C. 55.

3. The evidence fully supports the verdict, and the finding of the jury is conclusive. 95 Ark. 172; 104 *Id.* 162; 101 *Id.* 51; 100 *Id.* 330.

HUMPHREYS, J. Appellant was indicted at the March, 1916, term of the Garland Circuit Court for the crime of manslaughter, and at the September term

thereof was tried and convicted on said charge and his punishment fixed by the jury at imprisonment in the State penitentiary for a period of twelve months. He filed his motion for a new trial, which was overruled, after which judgment was rendered and sentence imposed, from which judgment and sentence he has appealed to this court.

J. R. Stratton, who had been stricken with paralysis, employed appellant to treat the disease according to a fasting and water cure, which was being practiced by appellant. The fasting and water cure, practiced by appellant on his patients, required the patient to totally abstain from the use of foods, and drink all the water possible. Appellant took J. R. Stratton through a thirty-five-day fast. Stratton was seized with a severe attack of hiccoughs during the last seventy-five hours of the fast, and in order to relieve him and prevent death therefrom, appellant placed a wide leather strap around his body and buckled it up as tight as he could draw it. Mrs. Stratton became alarmed and insisted upon calling in other physicians. Appellant protested and insisted that he be permitted to continue the fasting and water cure. After consulting friends, Mrs. Stratton decided to call in other physicians. Appellant reluctantly yielded, and when the physicians came, advised against the use of a stimulant or strong medicines and rich foods. Appellant was discharged and Doctors Cox and Smith were employed. When they took charge of the patient, he was in a semi-coma, his pulse was weak, fast and intermittent. They gave him a hypodermic of spartein and then treated him for hiccoughs and a weakened condition. He recovered from the hiccoughs but never recovered from the weakened condition and died at the expiration of five days.

The evidence on the part of the State tended to show that the treatment prescribed and administered to J. R. Stratton by appellant was irrational, unreasonable unscientific and was the proximate cause of his death.

The evidence on the part of appellant in a measure tended to show that the fasting and water cure, as practiced by him, was rational, reasonable and scientific and had wrought wonderful cures, and that it might have worked a cure on Stratton had he been permitted to continue the fast.

The cause was submitted to the jury on the theory that one who practices medicine for a remuneration would be guilty of involuntary manslaughter if death resulted to the patient on account of gross ignorance or lack of skill in selecting and administering the remedy. The instruction embodying this idea correctly declared the law as applicable to the theory advanced by the State.

The appellant's theory was to the effect that the remedy chosen was rational, reasonable and scientific; that the remedy chosen had been administered in a skillful manner; that the same remedy administered in the same way by him to other patients had greatly benefited and cured them; that this remedy had been selected and administered in good faith, believing it would cure the patient; that it was not the proximate cause of the death of J. R. Stratton, but if it were, that it was a mistake of judgment and not the result of gross ignorance and unskillful treatment on his part.

This court said in the case of *State* v. *Hardister and Brown*, 38 Ark. 605, quoting the syllabus: "For a mere mistake of judgment in the selection and application of remedies, resulting in the death of his patient, a physician is not criminally liable; but when death is caused by gross ignorance in the selection or application of remedies, by one grossly ignorant of the art he assumes to practice, he is criminally liable."

None of the instructions given clearly present the theory of appellant. Evidence was adduced at the trial showing that appellant possessed in a degree both knowledge of and skill in the use of the fasting and water cure, and that he had practiced it successfully. The evidence in the record warranted an instruction allowing for a

mistake in judgment.  Appellant was at least entitled to an instruction defining the difference between a felonious lack of knowledge and skill, on the one hand, and a mere mistake of judgment, on the other.  In other words, the jury should not have been left in a position to confuse a mistake of judgment with gross ignorance or lack of skill.

(1-2)  The second instruction asked by appellant and refused by the court correctly presented the law applicable to the theory advanced by appellant, and to which he is entitled upon the whole record.  That instruction is as follows:

"Involuntary manslaughter is the involuntary killing done without design, intention or purpose of killing, but in the commission of some unlawful act, or in the improper performance of some lawful act.

"For a mere mistake of judgment in the selection and application of remedies resulting in the death of his patient, a physician is not criminally liable, and whether one who assumes to practice medicine is grossly ignorant of the art or the selection of remedies or their application, or inapplicable or rashly applied, are all questions to be determined by the evidence."

It is insisted that the court committed error in declining to give instruction No. 9, on the presumption of innocence, requested by appellant.  This subject is fully covered in the instructions given by the court to the effect that the burden of proof was on the State to prove defendant's guilt beyond a reasonable doubt.

It is also insisted that an error was committed because the prosecuting attorney referred to the fact that appellant did not have a license to practice medicine. The court indicated that it was an improper argument, as that issue was not involved in the case.  It is unnecessary for us to comment upon it, as the prosecuting attorney will not likely repeat the statement on a new trial.

It is insisted that the court committed an error in using the words "unlawful act" in the first instruction.

It is pointed out by appellant that he was indicted for the commission of a lawful act "without due caution and circumspection." The court in giving instruction No. 1 defined involuntary manslaughter, and it is apparent that that portion of the instruction referring to a killing in the commission of an unlawful act was not intended as a direction to the jury in the instant case. It was merely used as a part of the statutory definition of manslaughter. It may have been just as well and perhaps better to have left it out, but no prejudicial error was committed by the court in the use of the words in the manner in which they were used in the instruction.

(3) It is strenuously insisted that the court erred in refusing to permit appellant to read excerpts to the jury from a book entitled "McFadden's Physical Culture." This court said, in the recent case of *Scullin et al.* v. *Vining,* 127 Ark. 124, 191 S. W. 924, that it is proper to read extracts from standard medical authorities upon the subject matter involved to an expert witness and to ask him whether he agrees or disagrees with the authorities to test the knowledge of the expert and to ascertain the weight of his testimony; and in that case clearly approved the rule that excerpts from such books can not be read to a jury as original and affirmative evidence.

It is insisted by appellant that instruction No. 13, given by the court, in effect told the jury the extent of punishment they should inflict if they found appellant guilty. Appellee concedes that the instruction was unfortunately worded. The court should have told the jury that in case they found appellant guilty, as charged, they should fix his punishment at some period in the penitentiary not to exceed one year. As the case will be tried again, it is unnecessary to go into the question of whether the instruction given by the court was so worded as to direct the jury to fix a certain punishment.

For the error indicated, the cause will be reversed and remanded for a new trial.