(No. 6385.   January 16, 1937.)

STATE, Respondent, v. W. F. McMAHAN, Appellant.

[65 Pac. (2d) 156.]

Hartley P. Kester, Leo McCarty, Verner R. Clements and Cox & Ware for Appellant.

Bert H. Miller, Attorney General, J. W. Taylor and Lawrence B. Quinn, Assistants Attorney General, for Respondent.

MORGAN, C. J.—■ Appellant, a practicing physician, was arrested on the charge of manslaughter and was given a preliminary examination wherein evidence was introduced, on behalf of respondent, tending to show he had committed a criminal abortion, as a result of which Stella Fleischman, the woman on whom the evidence tended to show it was committed, died. He was held to answer in the district court for said crime, and an information was filed against him which, omitting the title, verification and names of witnesses, is as follows:

"RAY E. DURHAM, Esq., Prosecuting Attorney in and for the County of Nez Perce, aforesaid, for and in behalf of the State of Idaho, comes into said court in the year of 1936, and gives the Court here to understand and be informed that W. F. McMAHAN prior to the filing of this information had a preliminary examination before Geo. E. Erb, Justice of the Peace of First Lewiston Precinct in said county and state and was held to answer to the said District Court for the crime of manslaughter that on or about, to-wit: the 4th day of February 1936, at the County of Nez Perce in the State of Idaho, the aforesaid W. F. McMAHAN then and there being committed the crime of manslaughter who then and there did wilfully, unlawfully and feloniously kill one Stella Fleischman, a human being, contrary to the form of the statute in such case made and provided.

"RAY E. DURHAM,
"Prosecuting Attorney,
"Nez Perce County, Idaho,"

It is clear, from reading that document, appellant had a preliminary examination and was held to answer for manslaughter committed by wilfully, unlawfully and feloniously killing Stella Fleischman and, although he was not therein accused of anything in language direct and certain, the information was treated by the parties litigant, and we will

treat it, as containing an allegation charging him with having so killed her.

Appellant demurred to the information on the ground that it did not substantially conform to the requirements of I. C. A., secs. 19–1309 and 19–1311, hereinafter copied. The demurrer was overruled, and the ruling is assigned as error, which presents the question as to whether or not an information which accuses a defendant of having, at a time and place therein named, wilfully, unlawfully and feloniously killed a human being, without stating the acts relied on to constitute manslaughter, is sufficient to charge him with the commission of that crime.

What indictments and informations shall contain, and the rules by which their sufficiency shall be tested are prescribed by statute in this state. Sec. 19–1203 provides:

"The offense charged in all informations shall be stated with the same fullness and precision in matters of substance as is required in indictments in like cases, . . . . "

Therefore, the following sections, stating what indictments shall contain, apply to informations. Sec. 19–1307 is:

"All the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code."

Secs. 19–1309, 19–1310, 19–1311 and 19–1313 are as follows:

19–1309. "The indictment must contain:

"1. The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties.

"2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

19–1310. "It may be substantially in the following form:

"The state of Idaho against A. B., in the district court of the —— judicial district, in the county of ——. —— term, 19—.

"A. B., is accused by the grand jury of the county of —— by this indictment, of the crime of (giving its legal

appellation, such as murder, arson, or the like), committed as follows:

"The said A. B., on the ―― day of ――, 19―, at the county of ――, (here set forth the act or omission charged as an offense)."

19-1311. "It must be direct and certain as it regards:

"1. The party charged.

"2. The offense charged.

"3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

19-1313. "The indictment must charge but one offense, but the same offense may be set forth in different forms under different counts, and, when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count."

Sec. 19-1318 contains the following:

"The indictment is sufficient if it can be understood therefrom: . . . . ·

"6. That the act or omission charged as the offense is clearly and distinctly set forth ·in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

"7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon conviction, according to the right of the case."

Sec. 19-1319 is as follows:

"No indictment is insufficient, nor can the trial, judgment, or other proceeding thereon, be affected, by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits."

Our statutory provisions relative to indictments and informations were copied in 1864, by the Idaho territorial legislature, from the laws of California which were enacted in that state in 1851. During territorial days, and for a period of many years of statehood, the plain mandates of these statutory provisions were obeyed by the courts, and it was the uniform practice in Idaho, in homicide cases, to

state in indictments and informations the means by which, and the manner in which, the death charged was accomplished. In 1914 this court had under consideration, and decided, *State v. Smith*, 25 Ida. 541, 138 Pac. 1107, wherein Smith, who had been held to answer for manslaughter, was attempted to be charged in the following language:

"That the said defendant, Charles C. Smith, at the time and place aforesaid, did unlawfully and feloniously kill one Clara F. Foy, a human being; contrary to the form of the statute in such case made and provided."

Commenting on that information the court said:

"It will be observed from the foregoing provisions of the statute that the statute of this state requires an information or accusation against a person to be direct and certain as to the *offense charged,* that is, as to the particular name, character or grade of crime that the party is accused with, and it also requires that it be direct and certain as to the 'act or omission' which it is alleged constitutes the crime. In other words, to simply charge that a person committed murder or larceny merely charges the name of the offense. That alone is not sufficient. It is necessary to in some way inform the party accused as to how it is claimed he committed the murder, whether by shooting, by striking a blow, by drowning, poisoning, or in some other manner perpetrating the offense; or, if he committed larceny, what property he took.

"In the case at bar, it will be discovered at a glance that the prosecuting attorney did not pretend to state *how or in what manner, or by what means* the appellant committed the crime of manslaughter. He simply charges that he 'did unlawfully and feloniously kill one Clara F. Foy'. This is sufficient as far at it goes. It charges the defendant with the commission of homicide. The statute requires more. It requires 'a statement of the acts constituting the offense in ordinary and concise language'. No one would suppose from reading this information that the prosecuting attorney expected to convict the defendant upon the charge of having had a patient under his care and attention and having starved that patient to death in course of a medical treatment. No one would surmise from this information whether the prosecutor intended to show that death *by starving* was

the result of an experiment or an intention to take the life of Clara Foy, or was the result of *ignorance* and *criminal carelessness.* We find, however, from the record in the case that, as a matter of fact, the prosecution attempted to establish the defendant's guilt by proving that he undertook the treatment of one Clara F. Foy for some real or imaginary ailment and that he sought to effect a cure by having the patient fast, and that this treatment was kept up too long and the patient finally died. In other words, he has been convicted of criminal negligence and ignorance. To our minds, this case well illustrates the purpose and meaning of the statute. A defendant before being placed upon trial for his life or liberty is entitled to be apprised not only of the *name of the offense* with which he is charged, but, in general terms, of the *manner* in which he is charged with having committed the offense. The statute is plain and explicit in this respect.''

This was the state of the law of Idaho on the subject here under consideration until April 30, 1917, when this court promulgated the decision in *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690, wherein it held sufficient an indictment charging murder in the following language:

''The said Alfred Lundhigh, on or about the 11th day of June, 1915, at the county of Bingham and state of Idaho, and prior to the filing of this information, did then and there wilfully, unlawfully, feloniously, and with malice aforethought, kill and murder one Evangelos Pappas, a human being.''

In the Lundhigh case *State v. Smith* was expressly overruled, and attention is invited to the views of the members of the court, separately stated, as to what an indictment or information should contain. In the three opinions in that case the authorities relied on were cited and nothing is to be gained by repeating here a statement of the reasons which prompted the members of the court to reach opposite conclusions as to the sufficiency of the information.

Since the Lundhigh decision the form of information employed in that case has been in common use in Idaho and has been held sufficient whenever called in question in this court in homicide cases. (*State v. Askew,* 32 Ida. 456, 184 Pac.

473; *State v. Caviness,* 40 Ida. 500, 235 Pac. 890; *State v. Boykin,* 40 Ida. 536, 234 Pac. 157; *State v. Gee,* 48 Ida. 688, 284 Pac. 845; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898.)

In *State v. Gee,* above cited, it is said:

"And in any event, if defendant was not sufficiently informed by the terms of the information as to the charge he was required to meet, in a proper case he might demand a bill of particulars. While the right to do so is not recognized by our statutes, this court has held that a defendant would be entitled to such a bill in the sound discretion of the trial judge."

In support of that statement, *State v. Rathbone,* 8 Ida. 161, 67 Pac. 186, and *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60, are cited.

In this case appellant demanded a bill of particulars, and in the exercise of "the sound discretion of the trial judge" it was denied.

We are not prepared to say that a case may not arise wherein the defendant in a criminal action would be entitled to a bill of particulars, and wherein it would be an abuse of discretion to deny it, but we do say it is the clear intent and purpose of our statute that the defendant shall be made acquainted with the nature of the charge against him by reading the information, and that it must contain "a statement of the acts constituting the offense in ordinary and concise language." This is a right which no one has discretion to deny.

It is for the legislature, not the courts, to say what an indictment or an information shall contain (Idaho Const., art. 2, sec. 1). The legislature has said what is required to make an accusation sufficient and the courts are not permitted to say to the contrary. The information in this case is insufficient to conform to the requirements of secs. 19–1309 and 19–1311 and the demurrer should have been sustained.

The saving grace of sec. 19–1319, to the effect that no defect or imperfection in an indictment in matter of form, which does not tend to prejudice a substantial right of the defendant, shall render it insufficient or affect the judgment, is not available to mend the defect in this information, be-

cause it did, very detrimentally affect the substantial rights of appellant.

The evidence, at the preliminary examination, tended to show respondent would proceed on the theory that appellant had performed a criminal abortion on Stella Fleischman as a result of which she suffered an attack of general peritonitis which caused her death. At the trial in the district court the prosecution offered evidence tending to show an abortion had been performed which resulted in the death of the deceased, but it was entirely insufficient to sustain a conviction based on that theory, if one had been secured. Testimony, by and on behalf of appellant, showed he treated the woman for general peritonitis from which disease she died. On rebuttal the prosecution produced evidence showing negligence and lack of skill in the treatment prescribed and administered by appellant, and the trial resulted in a verdict that he was guilty of involuntary manslaughter ''on the ground that he committed an act that might produce death and did so without due caution and circumspection.''

Sec. 17–1106 of our code is as follows:

Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

1. Voluntary—upon a sudden quarrel or heat of passion.
2. Involuntary—in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, burglary, or mayhem; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.''

It was not until during the trial that appellant or his counsel were in any manner informed that he was brought before the bar of justice to answer for a homicide committed through negligence and carelessness. He was entitled to know, before being required to plead to the information, the nature of the charge against him, and it would have told him that had it been drawn in conformity to the plain mandates of the statute. Had it so informed him, he would have been in position to prepare his defense. Without knowledge as to the nature of the charge upon which he was to be tried, he could not do so.

■ To put a man on trial without giving him, in the information, "*a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended,*" and to let him know these facts, for the first time when his trial is in progress, is to deprive him of the protection the statute was designed to give him and deny him due process of law in violation of article 1, section 13 of the Constitution.

The decision of the Lundhigh case, as to the sufficiency of the information, and the cases following it in that particular, are overruled.

■ During the trial certain documents were, by the prosecuting attorney, placed in the hands of witnesses called by him, and were by them identified. The witnesses were then examined with respect to the documents, and requests for inspection of them by counsel for appellant, prior to their being offered in evidence, were denied. To illustrate: exhibit "B," a document purporting to be a record of the hospital wherein Mrs. Fleischman was treated, immediately prior to her death, was identified by a physician connected with the institution, who testified he had a telephone conversation with appellant on the day she was admitted to the hospital. Upon the doctor being questioned with respect to the document and the conversation, the following occurred:

"Q. Did you take any message from Dr. McMahan at that time?

"A. I did.

"Q. With reference to what patient?

"A. Mrs. Stella Fleischman.

"Mr. COX: At this time we ask leave to inspect the paper about which the witness is being examined.

"The COURT: It will be shown you before it is admitted, but it isn't offered yet.

"Mr. COX: Our practice here is to see the instrument when it is identified and when the witness is being examined about it. I am asking your Honor to allow us to inspect it at this time while he is examining the witness so we may be able to understand what the examination is about. We can't frame our objections or know what the matter is unless we

are given this opportunity. This is an exhibit which has been marked for identification,—

"The COURT: Yes, but it isn't offered yet.

"Mr. COX: —and we are asking leave to inspect it.

"The COURT: I will deny it at this time, but if it is ever offered you will get a chance to inspect it."

The witness testified he could not recall what the instructions from appellant were without referring to the memorandum. Over objection by appellant's counsel to the witness being permitted to refresh his memory from an inspection of the document without it being shown to them, he was allowed to examine exhibit "B," and, having refreshed his memory therefrom, to testify to what the instructions were which he had received from appellant with respect to the treatment he desired given his patient. Exhibit "B" was never introduced in evidence, and appellant's counsel never had an opportunity to make use of it in their cross-examination of the witness. The right of a litigant to inspect a document shown to a witness by his opponent is statutory. Sec. 16–1212 provides:

"Whenever a writing is shown to a witness it may be inspected by the opposite party, . . . . "

The denial of the right of inspection, by appellant and his counsel, of documents shown by the prosecuting attorney to respondent's witnesses was prejudicial error.

█ The giving of instructions numbered 11 and 12 is assigned as error. These instructions will be better understood when considered in connection with a part of instruction numbered 6, and a part of instruction numbered 10. In instruction numbered 6, the judge told the jury:

"Our statute does provide that in every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. But as already hereinbefore stated in involuntary manslaughter it is not necessary that there should exist the intent to kill; the only intent necessary, if the killing resulted from the performance of an unlawful act, is the intent to do the unlawful act which caused the killing. And I instruct you that if a lawful act which might or may produce death is done or performed in an unlawful manner or without due caution and circumspec-

tion, such unlawful manner of performance or lack of caution and circumspection in its performance constitutes criminal negligence.''

In instruction numbered 10, he said:

'' . . . . And it is likewise the duty of the jury to determine from the evidence in this case whether the defendant in administering to or treating the said Stella Fleischman committed an act or acts that might produce death and, if so, whether he did so without due caution and circumspection.''

Instructions numbered 11 and 12 are as follows:

11. ''Lack of due caution and circumspection on the part of one who undertakes to diagnose, treat, operate or prescribe for any disease or other physical ailment or condition of any person is the failure or omission on his part to exercise such skill and care as are ordinarily exercised by others practicing his profession under like or similar circumstances. The law requires that anyone in this State who holds himself out as practicing any system or mode of treating sick or afflicted persons or to diagnose, treat, or operate or prescribe for any disease, injury, deformity or other physical condition, of any person, shall possess that reasonable degree of learning, skill, and experience which is ordinarily possessed by others of his profession; and in treating a patient it requires of such practitioner that he exercise that reasonable and ordinary care, diligence and skill that is ordinarily exercised by others of his profession under like circumstances and conditions, and the failure so to do would be a lack of that due caution and circumspection that the law enjoins.''

12. ''I therefore instruct you further, that if one who holds himself out as practicing any system or mode of treating sick or afflicted persons or to diagnose, treat or prescribe for any disease, injury, deformity or other physical condition of any person, treats a patient and in so treating any patient prescribes any medicine or drug or substance which might produce death, or operates or uses or employs any instrument or other means in so treating such patient, which instrument or means might produce death, and he does so without due caution and circumspection as hereinbefore in these instructions defined, and the death of such patient

results from the use of such medicine, drug, substance, instrument or treatment, such practitioner would be guilty of manslaughter.''

The failure to exercise due caution and circumspection by one who undertakes to diagnose, treat, operate, or prescribe for disease or physical ailment of another, defined in instruction 11 to be ''the failure or omission on his part to exercise such skill and care as are ordinarily exercised by others practicing his profession under like or similar circumstances,'' invokes the rule with respect to civil liability of physicians and surgeons, which is based on implied contract between them and their patients, and not the rule of criminal liability to the state for malpractice resulting in the death of the patient, and in making the practitioner guilty of manslaughter (48 C. J. 1112, secs. 100 and 101).

Discussing the degree of negligence which will justify the conviction of a defendant of manslaughter, the Supreme Court of Kansas in *State v. Custer*, 129 Kan. 381, 282 Pac. 1071, 67 A. L. R. 909, quoted from Archbold's Criminal Pleading, twenty-seventh edition, 888, as follows:

'' 'Where death results in consequence of a negligent act, it would seem that to create criminal responsibility the degree of negligence must be so gross as to amount to recklessness. Mere inadvertence, while it might create civil liability, would not suffice to create criminal liability. . . . . And it is not sufficient to create criminal liability to show that the act which caused death constituted a tort.' ''

Continuing, the court said:

''The subject was set at rest by the Lord Chief Justice, in the appeal of Percy Bateman, 19 Cr. App. Rep. 8 (1925). Bateman was a physician who was charged with malpractice in an obstetrical case, and was convicted of manslaughter. On appeal the conviction was quashed. In the opinion it was said:

'' 'Before we deal with the directions of the learned judge to the jury, it may be well to consider generally the law on this subject. In expounding the law to juries on the trial of indictments for manslaughter by negligence, judges have often referred to the distinction between civil and criminal liability for death by negligence. The law of crimi-

nal liability for negligence is conveniently explained in that way. If A. has caused the death of B. by alleged negligence, then, in order to establish civil liability, the plaintiff must prove (in addition to pecuniary loss caused by the death) that A. owed a duty to B. to take care, that that duty was not discharged, and that the default caused the death of B. To convict A. of manslaughter, the prosecution must prove the three things above mentioned and must satisfy the jury, in addition, that A.'s negligence amounted to a crime. In the civil action, if it is proved that A. fell short of the standard of reasonable care required by law, it matters not how far he fell short of that standard. The extent of his liability depends not on the degree of negligence, but on the amount of damage alone. In a criminal court, on the contrary, the amount and degree of negligence are the determining question. There must be *mens rea*. . . . .

" 'In explaining to juries the test which they should apply to determine whether the negligence, in the particular case, amounted or did not amount to a crime, judges have used many epithets, such as "culpable," "criminal," "gross," "wicked," "clear," "complete." But, whatever epithet be used and whether an epithet be used or not, in order to establish criminal liability the facts must be such that, in the opinion of the jury, the negligence of the accused went beyond a mere matter of compensation between subjects and showed such disregard for the life and safety of others as to amount to a crime against the state and conduct deserving punishment.' Pages 10, 11 of 19 Cr. App. Rep.

"In discussing the alleged misdirection of the jury by the trial court, the Lord Chief Justice said:

" 'If the words "gross," "wicked," and "culpable" are put aside, this summing-up amounts to a direction to the jury that they must draw the line between mistake or error of judgment on the one hand, and carelessness or incompetence on the other hand. If there was only mistake or error of judgment there is no liability, but if there was any falling short of a fair average degree of care or competence, then there is liability. Such a direction would be complete and accurate on the trial of an action for damages for negligence. It is not adequate on the trial of an in-

dictment for manslaughter. . . . . It is, nevertheless, most desirable that in trials for manslaughter by negligence it should be impressed on the jury that the issue they have to try is not negligence or no negligence, but felony or no felony. It is desirable that, as far as possible, the explanation of criminal negligence to a jury should not be a mere question of epithets. It is, in a sense, a question of degree, and it is for the jury to draw the line, but there is a difference in kind between the negligence which gives a right to compensation and the negligence which is crime.' Page 16 of 19 Cr. App. Rep.''

(See, also, *State v. Reynolds*, 42 Kan. 320, 22 Pac. 410, 16 Am. St. 483; *Commonwealth v. Thompson*, 6 Mass. 134; *Commonwealth v. Pierce*, 138 Mass. 165, 52 Am. Rep. 264; *Rice v. State*, 8 Mo. 561; *State v. Schulz*, 55 Iowa, 628, 8 N. W. 469, 39 Am. Rep. 187; *State v. Hardister and Brown*, 38 Ark. 605, 42 Am. Rep. 5; *Feige v. State*, 128 Ark. 465, 194 S. W. 865; *Hampton v. State*, 50 Fla. 55, 39 So. 421; *State v. Tankersley*, 172 N. C. 955, 90 S. E. 781, L. R. A. 1917C, 533; *State v. Lancaster*, 208 N. C. 349, 180 S. E. 577; *Fitzgerald v. State*, 112 Ala. 34, 20 So. 966; *Omaha & R. V. R. Co. v. Chollette*, 33 Neb. 143, 49 N. W. 1114; *Barrow v. State*, 17 Okl. Crim. 340, 188 Pac. 351, 9 A. L. R. 207; *State v. Lester*, 127 Minn. 282, 149 N. W. 297, L. R. A. 1915D, 201; *People v. Adams*, 289 Ill. 339, 124 N. E. 575; *People v. Anderson*, 310 Ill. 389, 141 N. E. 727; *People v. Oberlin*, 355 Ill. 317, 189 N. E. 333; 22 Am. & Eng. Ency. of Law, 2d ed., 810; 29 C. J. 1158; 45 C. J. 1371.)

In *People v. Oberlin*, above cited, the Supreme Court of Illinois said:

''Negligence, to become criminal, must necessarily be reckless or wanton and of such character as to show an utter disregard for the safety of others under circumstances likely to cause injury.''

In 29 C. J. 1158 it is said:

''A physician, surgeon, or other similar practitioner, . . . . is guilty of manslaughter if he unintentionally causes the death of a patient by gross ignorance, negligence, or inattention, but a mere mistake or error of judgment or a mere

want of skill, where there is not gross negligence or ignorance, will not render him liable.''

■ Sec. 17–1106, defining involuntary manslaughter, and particularly that part of it which makes felonious the commission of a lawful act which might produce death, without due caution and circumspection, must be read and construed together with sec. 17–114, which provides: ''In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence.'' In order to properly construe that section, full force and effect must be given to the qualifying word ''criminal,'' used in connection with the word ''negligence.''

■ The term ''criminal negligence,'' as used in that section, does not mean merely the failure to exercise ordinary care, or that degree of care which an ordinarily prudent person would exercise under like circumstances. It means gross negligence. It is such negligence as amounts to a reckless disregard of consequences and of the rights of others.

It is true this court, in *State v. Brace*, 49 Ida. 580, 584, 290 Pac. 722, 723, in disposing of a contention like that here under consideration, said:

''The appellant next complains of instructions numbers 11 and 12 and in refusing to give appellant's requested instruction number 8, it being appellant's contention that criminal negligence in this state must be gross negligence, and that the latter portion of instructions 11 and 12, where the standard is that of ordinary care or that degree of care which an ordinarily prudent person would exercise under like circumstances, was erroneous; and that since the defendant himself was not with the sheep at the time they were herded, the thought expressed in requested instruction 8 should have been given.

''Appellant cites 45 C. J. 1371, and cases cognate thereto in support of his position; on the next page of the text, however, 1372, it will be noted the rule is declared to be different where there is a statute which as indicated hereafter we have. Appellant in this connection relies upon C. S., sec. 8087, which requires 'in every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negli-

gence.' A complete answer to appellant's contention is found in C. S., sec. 8074, which defines negligence in the criminal code as 'a want of such attention to the nature of probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.' The two instructions given followed in substance sec. 8074 and were therefore not erroneous.''

The error in the above-quoted portion of the opinion consists of failure to give force and effect to the word "criminal," which modifies and qualifies the word "negligence" used in the statute. The court also overlooked, or disregarded, the introductory paragraph of C. S., sec. 8074 (now I. C. A., sec. 17–101), which limits the application of the definitions which follow in succeeding paragraphs. It is:

"The following words have in this code the signification attached to them in this section, *unless otherwise apparent from the context*:"

Subsection 2 is:

"The words 'neglect,' 'negligence,' 'negligent,' and 'negligently,' import a want of such attention to the nature of probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.''

In construing C. S., sec. 8087 (I. C. A., sec. 17–114) which makes a union, or joint operation, of act and . . . . *criminal* negligence necessary to constitute a crime, the court disregarded the context of the sentence in which the word "negligence" is used, and construed that statute as if it read: "In every crime or public offense there must exist a union, or joint operation, of act and intent, or . . . . negligence," and failed to limit the word "negligence" by the qualifying word "criminal."

The legislature did not intend every act done negligently, resulting in what would have been a crime if done intentionally, to be criminal because of the negligence, but intended only to constitute such acts criminal in the event such negligence amounted to the degree contemplated by sec. 17–114. If it had been the intent of the legislature to make an act criminal, because of want of ordinary care on the part of its perpetrator, the word "negligence" would have been used

in sec. 17–114, and the word ''criminal'' would have been omitted therefrom.

Probably if the statute had provided: ''In every crime or public offense there must exist a union, or joint operation, of act and intent, *or such negligence as manifests a reckless disregard of consequences and of the rights of others,*'' our court would not have upheld the instruction complained of in *State v. Brace.* However, that is exactly what is meant by the use of the term ''criminal negligence'' in the statute.

The above-quoted portion of the opinion in *State v. Brace* is overruled.

In *People v. Hurley,* 13 Cal. App. (2d) 208, 56 Pac. (2d) 978, 983, the court quoted as follows from *People v. Driggs,* 111 Cal. App. 42, 295 Pac. 51, 53:

'' 'As the cause must go back for another hearing, it is incumbent for us to call attention to at least one other point urged by the respondent relative to one of the instructions given to the jury. The record shows that the trial court gave to the jury as one of its instructions section 20 of the Penal Code, reading as follows: ''In every crime or public offense there must exist a union, or joint operation of act or intent, or criminal negligence.'' And then, as a definition of ''criminal negligence,'' the following: ''The words 'neglect,' 'negligence,' 'negligent,' and 'negligently' import a want of such attention to the nature or probable consequences of the act or omission, as a prudent man ordinarily bestows in acting in his own concerns.'' . . . . Though found in the Penal Code, this definition of ''negligence'' is only of an act which fixes civil liability; it is the definition of the kind of act which fixes responsibility upon, for instance, drivers of automobiles, where no criminal element whatever is involved. In order to constitute criminal negligence, there must enter into the act some measure of wantonness or flagrant or reckless disregard of the safety of others, or wilful indifference. If no one of these elements enters into the act, the person charged cannot be held guilty of criminal negligence.' ''

The judgment is reversed and the cause remanded with instructions to sustain the demurrer to the information.

Holden and Ailshie, JJ., concur.

BUDGE, J., Dissenting.—It is useless and undesirable as a rule to express one's dissenting views. However, in the instant case, I feel bound to do so, limiting my views to that portion of the majority opinion overruling what has been the unquestioned, settled law in this jurisdiction since 1917. I will also call attention to the earlier decisions during territorial days and down to the case of *State v. Lundhigh,* 30 Ida. 365, 370, 164 Pac. 690. The majority opinion not only overrules the settled law of this jurisdiction, but disregards the great weight of authority from other jurisdictions where the same question has arisen under like or similar statutes.

The first question discussed at some length in the majority opinion is directed against the sufficiency of the information, a demurrer thereto having been interposed and overruled in the trial court. The contention is made that the information is insufficient for the reason "that the information did not set out the means by which and the manner in which the death charged was accomplished." The information alleges *inter alia*:

"That on or about, to-wit: the 4th day of February, 1936, at the County of Nez Perce in the State of Idaho, the aforesaid W. F. McMAHAN then and there being committed the crime of manslaughter who then and there did wilfully, unlawfully and feloniously kill one Stella Fleischman, a human being, contrary to the form of the statute in such case made and provided."

Manslaughter is defined by I. C. A., sec. 17–1106, as follows:

"Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

1. Voluntary—upon a sudden quarrel or heat of passion.
2. Involuntary—in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery burglary, or mayhem, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

It will be observed that the allegations of the information are substantially in the language of the statute defining the offense.

I. C. A., sec. 19–1307, provides:

"All the forms of a pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code."

I. C. A., sec. 19–1317, provides:

Words used in a statute to define a public offense need not be strictly pursued in the indictment (or information); but other words conveying the same meaning may be used."

I. C. A., sec. 19–1319, recites that:

"No indictment is insufficient, nor can the trial, judgment, or other proceeding thereon, be affected, by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits."

I. C. A., sec. 19–1309, provides that the indictment or information must contain:

"  . . . .

1. The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties.

2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

I. C. A., sec. 19–1311, provides that the information or indictment must be direct and certain as it regards:

"  . . . .

"1. The party charged.

"2. The offense charged.

"3. The particular circumstances of the offense charged, *when they are necessary to constitute a complete offense.*" (Italics inserted.)

The history of the enactment of the statutes above referred to is set out in the majority opinion, it being there stated that:

"Our statutory provisions relative to indictments and informations were copied in 1864, by the Idaho territorial legislature from the laws of California which were enacted in that state in 1851."

This statement has been made by this court upon numerous occasions and is correct. I take issue, however, with the following statement in the majority opinion:

"During territorial days, and for a period of many years of statehood, the plain mandates of these statutory provisions were obeyed by the courts, *and it was the uniform practice in Idaho, in homicide cases, to state in indictments and informations the means by which, and the manner in which, the death charged was accomplished.*"

An examination of Idaho cases, beginning with *United States v. Mays,* 1 Ida. 763, down to and including *State v. Hall,* 25 Ida. 107, 135 Pac. 1163,[1] discloses clearly that it was not the uniform practice in Idaho in homicide cases to state in indictments and informations the means by which, and the manner in which, the death charged was accomplished. In some of the cases, the requirement was upheld; in others it was not. In a greater number of cases it is impossible to ascertain whether the information alleged "the means by which, and the manner in which, the death charged was accomplished."

In *People v. Butler,* 1 Ida. 231, it was held that:

" 'An indictment is sufficient in substance if it describes the offense charged in the language of the statute by which it is created or defined.' (*People v. White,* 34 Cal. 183.)

"Indictments in matters of averment are sufficient if they

---

[1] *United States v. Mays,* 1 Ida. 763 (769); *People v. Butler,* 1 Ida. 231; *People v. Walters,* 1 Ida. 271; *People v. Ah Choy,* 1 Ida. 317; *People v. Ah Hop,* 1 Ida. 698; *People v. Cozad,* 1 Ida. 167; *People v. Dunn,* 1 Ida. 74; *People v. O'Conner,* 1 Ida. 759; *People v. Stock,* 1 Ida. 218; *People v. Walter,* 1 Ida. 386; *People v. O'Callaghan,* 2 Ida. 156, 9 Pac. 414; *Territory v. Evans,* 2 Ida. 425, 17 Pac. 139; *People v. Ah Too,* 2 Ida. 44, 3 Pac. 10; *People v. Armstrong,* 2 Ida. 298, 13 Pac. 342; *People v. Bernard,* 2 Ida. 193, 10 Pac. 30; *People v. Biles,* 2 Ida. 114, 6 Pac. 120; *People v. Dewey,* 2 Ida. 83, 6 Pac. 103; *People v. Kuok Wah Choi,* 2 Ida. 90, 6 Pac. 112; *People v. McDonald,* 2 Ida. 10, 1 Pac. 345; *People v. Mooney,* 2 Ida. 17, 2 Pac. 876; *People v. Pierson,* 2 Ida. 76, 3 Pac. 688; *People v. Woods,* 2 Ida. 364, 16 Pac. 551; *People v. Williams,* 2 Ida. 366, 16 Pac. 552; *Territory v. Guthrie,* 2 Ida. 432, 17 Pac. 39; *Territory v. Staples,* 3 Ida. 35, 26 Pac. 166; *State v. O'Brien,* 3 Ida. 374, 29 Pac. 38; *State v. Reed,* 3 Ida. 554, 32 Pac. 202; *State v. Collins,* 4 Ida. 184, 38 Pac. 38; *State v. Ellington,* 4 Ida. 529, 43 Pac. 60; *State v. Godard,* 4 Ida. 750, 44 Pac. 643; *State v. Hardy,* 4 Ida. 478, 42 Pac. 507; *State v. Hendel,* 4 Ida. 88, 35 Pac. 836; *State v. Hurst,* 4 Ida. 345, 39 Pac. 554; *State v. Perry,* 4 Ida. 224, 38 Pac. 655; *State v. Schieler,*

allege all the acts or facts which have been used by the legislature in defining the particular offense charged. (*People v. Cronin*, 34 Cal. 191.)''

By this decision, the rule of *People v. Cronin*, 34 Cal. 191, which established the law of California, upholding the short form of information, was adopted into our practice. The Butler case was cited and followed in *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60.

In *People v. Ah Choy*, 1 Ida. 317, it appears the indictment for murder was substantially in the language of the statute, and the court upheld it.

In *State v. Ellington*, 4 Ida. 529, 43 Pac. 60, manner and means appear at length, but a liberal rule from which it appears inferable that such allegations are not necessary is set forth. This case overruled *People v. O'Callaghan*, 2 Ida. 156, 9 Pac. 414, on its adherence to rigid technicality.

In *State v. Keller*, 8 Ida. 699, 70 Pac. 1051, the wording of the information does not appear, but the court applied the rule of *People v. Butler, supra,* and *State v. Ellington, supra,* and it appears inferable that the indictment was in the express words of the statute.

---

4 Ida. 120, 37 Pac. 272; *State v. Crump,* 5 Ida. 166, 47 Pac. 814; *State v. Gordon,* 5 Ida. 297, 48 Pac. 1061; *State v. Larkins,* 5 Ida. 200, 47 Pac. 945; *State v. Smith,* 5 Ida. 291, 48 Pac. 1060; *State v. Davis,* 6 Ida. 159, 53 Pac. 678; *State v. St. Clair,* 6 Ida. 109, 53 Pac. 1; *In re Davis,* 6 Ida. 766, 59 Pac. 544; *In re Moragne,* 6 Ida. 82, 53 Pac. 3; *State v. Alcorn,* 7 Ida. 599, 64 Pac. 1014, 97 Am. St. 252; *State v. Davis,* 7 Ida. 776, 65 Pac. 429; *In re Alcorn,* 7 Ida. 101, 60 Pac. 561; *State v. Corcoran,* 7 Ida. 220, 61 Pac. 1034; *State v. Dixon,* 7 Ida. 518, 63 Pac. 801; *State v. Dupuis,* 7 Ida. 614, 65 Pac. 65; *State v. Lyons,* 7 Ida. 530, 64 Pac. 236; *State v. Murphy,* 7 Ida. 183, 61 Pac. 462; *State v. Rice,* 7 Ida. 762, 66 Pac. 87; *State v. Rigley,* 7 Ida. 292, 62 Pac. 679; *State v. Taylor,* 7 Ida. 134, 61 Pac. 288; *State v. Watkins,* 7 Ida. 35, 59 Pac. 1106; *State v. White,* 7 Ida. 150, 61 Pac. 517; *State v. Yee Wee,* 7 Ida. 188, 61 Pac. 588; *In re Green,* 7 Ida. 94, 60 Pac. 82; *State v. Davis,* 8 Ida. 115, 66 Pac. 932; *State v. Gilbert,* 8 Ida. 346, 69 Pac. 62, 1 Ann. Cas. 280; *State v. Keller,* 8 Ida. 699, 70 Pac. 1051; *State v. McGann,* 8 Ida. 40, 66 Pac. 823; *State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849; *State v. Bland,* 9 Ida. 796, 76 Pac. 780; *State v. Rathbone,* 8 Ida. 161, 67 Pac. 186; *State v. Riggs,* 8 Ida. 630, 70 Pac. 947; *In re Levy,* 8 Ida. 53, 66 Pac. 806; *State v. Collett,* 9 Ida. 608, 75 Pac. 271; *State v. Levy,* 9 Ida. 483, 75

In *People v. Ah Hop*, 1 Ida. 698, the court recites that the indictment charged that "defendants feloniously, wilfully, deliberately and with premeditation killed one John Mc-Guivers." No recitation of manner or means appears to have been made. It was further held that "this court will give judgment without regard to technical defects, which do not affect substantial rights."

In *People v. Walter*, 1 Ida. 386, 387, the court recites the indictment to be as follows:

"the defendant on the 15th day of Sept., 1870, at Nez Perce County, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought did make an assault, etc. upon one Joseph Yotes, and him, the said Joseph Yotes, did feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought did kill and murder."

In *State v. Rathbone*, 8 Ida. 161, 67 Pac. 186, the charge was grand larceny, but the court went into detail into the sufficiency of the charge as to the allegations of fact, and made particular reference to the crime of murder, holding that

Pac. 227; *State v. Shuff*, 9 Ida. 115, 72 Pac. 664; *State v. Crea*, 10 Ida. 88, 76 Pac. 1013; *In re Sly*, 9 Ida. 779, 76 Pac. 766; *State v. Rooke*, 10 Ida. 388, 79 Pac. 82; *State v. Harness*, 11 Ida. 122, 80 Pac. 1129; *State v. Sly*, 11 Ida. 110, 80 Pac. 1125; *State v. Wetter*, 11 Ida. 433, 83 Pac. 341; *State v. Bond*, 12 Ida. 424, 86 Pac. 43; *State v. McGinnis*, 12 Ida. 336, 85 Pac. 1089; *In re Squires*, 13 Ida. 624, 92 Pac. 754; *State v. Barber*, 13 Ida. 65, 88 Pac. 418; *State v. Phinney*, 13 Ida. 307, 89 Pac. 634, 12 Ann. Cas. 1079, 12 L. R. A., N. S., 935; *State v. Zarlenga*, 14 Ida. 305, 94 Pac. 55; *State v. Squires*, 15 Ida. 327, 97 Pac. 411; *State v. Fleming*, 17 Ida. 471, 106 Pac. 305; *State v. Marren*, 17 Ida. 766, 107 Pac. 993; *State v. McGreevey*, 17 Ida. 453, 105 Pac. 1047; *In re Heigho*, 18 Ida. 566, 110 Pac. 1029, Ann. Cas. 1912A, 138, 32 L. R. A., N. S., 877; *State v. Lockhart*, 18 Ida. 730, 111 Pac. 853; *State v. Gruber*, 19 Ida. 692, 115 Pac. 1; *State v. Allen*, 20 Ida. 263, 117 Pac. 849; *State v. Moon*, 20 Ida. 202, 203, 117 Pac. 757, Ann. Cas. 1913A, 724; *State v. Yturaspe*, 22 Ida. 360, 125 Pac. 802; *State v. Allen*, 23 Ida. 772, 131 Pac. 1112; *State v. Fondren*, 24 Ida. 663, 135 Pac. 265; *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60; *State v. Willis*, 24 Ida. 252, 132 Pac. 962; *State v. Grigg*, 25 Ida. 405, 137 Pac. 371, 138 Pac. 506; *State v. Hall*, 25 Ida. 107, 135 Pac. 1163; *State v. Smith*, 25 Ida. 541, 138 Pac. 1107.

use of the exact words of the statute is enough to properly charge the crime.

In *State v. Collett,* 9 Ida. 608, 75 Pac. 271, the charge was grand larceny in the language of the statute.

In *State v. Shuff,* 9 Ida. 115, 72 Pac. 664, the information charged means and manner and was challenged. The court gave consideration to the requirements of informations charging murder, and held that a charge of murder in the language of the statute is sufficient. Reference is made in the opinion to *People v. Ah Choy,* 1 Ida. 317, *supra.*

In *State v. Sly,* 11 Ida. 110, 80 Pac. 1125, elaborate examination of the rule of pleading in charges of murder was made, and a charge of murder using the words of the statute upheld as against the contention that it is necessary to allege the manner and means. The charge in that case, however, did make some attempt at a statement of both manner and means, but was, as said by Justice Ailshie, undoubtedly defective as tested by the common-law rule. In this case the earlier Idaho cases are reviewed and the California cases as well. This case is instructive and valuable in that it points out the ruling of the earlier California cases, holding that it was necessary to set out the manner and means, and the later California cases abandoning the rule. In the course of that opinion it is stated:

"The sufficiency of the indictment is not to be tested by the rules of common law, but by the requirements of the criminal practice act of the state. That act provides that the particular circumstances need not be stated unless they are necessary to constitute the offense charged. Murder is the unlawful killing of a human being, with malice aforethought, and certainly the means by which the killing is accomplished can *never* become material in ascertaining the offense charged. . . . . We do not find this court citing the Aro case [6 Cal. 207, 65 Am. Dec. 503] and other cases following the rule there announced in any instance; but on the other hand, we find as early as *People v. Butler,* 1 Ida. 231, the court announcing that a description of the offense in the language of the statute is sufficient. . . . .

"It is clear to our minds from the foregoing authorities that it has never been the intention of this court since its organiza-

tion under the territorial government to the present time, to follow the doctrine laid down in the Aro and other early California cases in passing upon the sufficiency of an indictment or information. . . . . And when the prosecutor charged that the defendant did 'kill and murder one John H. Hays,' the defendant had clear and specific notice of the offense with which he was charged. 'The allegation that the defendant killed the deceased,' says Anders, C. J., in *State v. Day*, 4 Wash. 104, 29 Pac. 984, 'is certainly an averment that the latter died.' We think the information in this case is sufficient to charge the defendant with the crime of murder and we so hold.''

The means used to commit murder is not of the essential legal elements of that crime, although the means used to cause death, and the manner of their use, may be evidence tending to show that the crime of murder has been committed. These are ultimate facts to be proven, and were not such particular circumstances of the offense charged as were necessary to be alleged in order to constitute a complete offense.

In *State v. Smith*, 25 Ida. 541, 138 Pac. 1107, February 7, 1914, written by Justice Ailshie, it is held that an indictment or information is insufficient unless it alleges "how, or in what manner, or by what means, the appellant committed the crime of manslaughter.''

In 1917, in *State v. Lundhigh*, 30 Ida. 365, 164 Pac. 690, opinion written by the then Justice John C. Rice, *State v. Smith*, *supra*, was expressly overruled. In the Lundhigh case it was held that an indictment or information was sufficient if it charged the offense in the language of the statute, and the means by which, and the manner in which, the crime was accomplished were evidentiary facts.

The rule announced in the Lundhigh case has been followed as the settled law in this jurisdiction since its rendition in 1917, as will appear from the following cases: *State v. Askew*, 32 Ida. 456, 184 Pac. 473; *State v. Arnold*, 39 Ida. 589, 229 Pac. 748; *State v. Caviness*, 40 Ida. 500, 235 Pac. 890; *State v. Boykin*, 40 Ida. 536, 234 Pac. 157; *State v. Muguerza*, 46 Ida. 456, 268 Pac. 1; *State v. Gee*, 48 Ida. 688, 284 Pac. 845; *State v. Brooks*, 49 Ida. 404, 288 Pac. 894; *State v. Bush*, 50 Ida. 166, 295 Pac. 432; *State v. McClurg*, 50 Ida. 762, 300

Pac. 898; *State v. Frank,* 51 Ida. 21, 1 Pac. (2d) 181; *State v. Monteith,* 53 Ida. 30, 20 Pac. (2d) 1023.

The provisions of subdivision 3, I. C. A., section 19-1311, providing that indictments or informations must be direct and certain as it regards the particular circumstances of the offense charged, *when they are necessary to constitute a complete offense,* is not out of harmony with the rule heretofore announced and followed by this court, that an indictment or information is sufficient if it substantially follows the language of the statute stating the offense. The provisions of the foregoing statute provide for the statement of the particular circumstances or a statement of the means by which, or the manner in which, the crime was accomplished, only when they are necessary to constitute a complete offense, such as in the case of a crime not included in or defined by statute. The rule adopted by this court simply means that when the statute defines or describes the act which constitutes a particular offense, the indictment or information is sufficient if it describes the offense in the language employed in the statutory definition. Manslaughter is not one of the offenses which requires or makes necessary that the particular circumstances of the offense be alleged. The statute itself sets out the acts constituting the offense and if the information follows the language of the statute it is sufficient,

The rule announced in *State v. Lundhigh, supra,* finds support in the cases from other jurisdictions.[2]

In the latest pronouncement of the California court, *People v. Herbert,* 6 Cal. (2d) 541, 58 Pac. (2d) 909, the following language is used:

---

[2] California: *People v. Cronin,* 34 Cal. 191; *People v. Weaver,* 47 Cal. 106; *People v. King,* 27 Cal. 507, 87 Am. Dec. 95; *People v. Herbert,* 6 Cal. (2d) 541, 58 Pac. (2d) 909. Arizona: *Molina v. Territory,* 12 Ariz. 14, 95 Pac. 102; *Macias v. State,* 39 Ariz. 303, 6 Pac. (2d) 423; *Collins v. State,* 37 Ariz. 353, 294 Pac. 625; *Azbill v. State,* 19 Ariz. 499, 172 Pac. 658; *Shaughnessy v. State,* 43 Ariz. 445, 32 Pac. (2d) 337; *Marquez v. State,* 13 Ariz. 135, 108 Pac. 258; *Guiterrez v. State,* 44 Ariz. 114, 34 Pac. (2d) 395; Arkansas: *Bramlett v. State,* 184 Ark. 808, 43 S. W. (2d) 364; *Bowie v. State,* 185 Ark. 834, 49 S. W. (2d) 1049, 83 A. L. R. 426; *State v. Delong,* 89 Ark. 391, 117 S. W. 524. New Mexico: *State v. Roy,* 40 N. M. 397, 60 Pac. (2d) 646. Mon-

"The ingredient of manslaughter is that a human life was unlawfully taken. . . . . The statute defining it is general, it makes no difference as to particular means or method by which it is committed if death ensued from the commission of an unlawful act not amounting to a felony, or from the commission of a lawful act which might produce death, in an unlawful manner, or the commission of a lawful act without due caution and circumspection. (Sec. 192, Penal Code.) The manner of its commission need not be pleaded."

For an instructive case see *State v. Roy*, 40 N. M. 397, 60 Pac. (2d) 646.

The appellant was denied no substantial right by the failure of the indictment to set out the means by which and the manner in which the death charged was accomplished, since a preliminary examination was had and held before a committing magistrate which furnished the appellant sufficient information as to the means by which and the manner in which the death charged was accomplished. In *State v. Gee*, 48 Ida. 688, 284 Pac. 845, it is said:

"And in any event, if defendant was not sufficiently informed by the terms of the information as to the charge he was required to meet, in a proper case he might demand a bill of particulars. While the right to do so is not recognized by our statute, this court has held that a defendant would be entitled to such a bill in the sound discretion of the trial court."

(See, also, *State v. Rathbone*, 8 Ida. 161, 67 Pac. 186; *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60.)

Appellant is in no position to complain of the action of the court in denying his demand that he be furnished with a bill of particulars, in view of the fact that a preliminary examina-

tana: *State v. Nielson*, 38 Mont. 451, 100 Pac. 229; *State v. Louie Won*, 76 Mont. 509, 248 Pac. 201; *State v. Gondeiro*, 82 Mont. 530, 268 Pac. 507; Nevada: *State v. McLane*, 15 Nev. 345. Virginia: *Hurd v. Commonwealth*, 159 Va. 880, 885, 165 S. E. 536; *Bausell v. Commonwealth*, 165 Va. 669, 181 S. E. 453, 459. Colorado: *Ryan v. People*, 50 Colo. 102, 114 Pac. 306, Ann. Cas. 1912B, 1232. Texas: *Jessie v. State*, 126 Tex. Cr. 250, 70 S. W. (2d) 743. Alabama: *Gaines v. State*, 146 Ala. 16, 41 So. 865. Maine: *State v. Morrissey*, 70 Me. 401. Michigan: *People v. Roberts*, 211 Mich. 187, 178 N. W. 690, 13 A. L. R. 1253.

tion had been held. He made no application for a continuance upon the ground of surprise due to the nature or character of the evidence introduced by the state. Murder may be committed by so many different means and in so many different ways that would be unknown to the prosecutor that to hold otherwise and require the state to allege the manner and means might well result in defeating justice.

In *State v. Ellington, supra,* the late Justice Huston used the following language:

"It must be admitted we think, that a disposition on the part of some of our courts to give a strained latitude to technicalities in behalf of persons accused of crime has not only tended to make our courts, in the administration of the criminal law, an arena for the exhibition of professional acuteness and agility, but make us obnoxious to the charge of Lord Hale (2 Hale's Pleas of the Crown, 193); 'More offenders escape by the overeasy ear given to exceptions in indictments than by their own innocence, and many times gross murders, burglaries, robberies and other heinous and crying offenses escape by these unseemly niceties, to the reproach of the law, to the shame of the government and to the encouragement of villainy, and to the dishonor of God.' "

Criminal pleading should be liberalized, rather than restricted, to the end that justice be expeditiously administered and crime minimized. Justification may be found in the charge laid against the courts by reason of adherence to the strict rules of the common law. No possible prejudice to the substantial rights of the appellant can be logically urged due to the failure of the information to allege the means by which, and the manner in which, the killing was accomplished. Serious consequences may well follow the rule announced in the majority opinion. The judgment in this case has been reversed not only for the reason that the information failed to state the manner and means, but upon other grounds, and as to the other grounds I express no opinion.

GIVENS, J.—I concur in the opinion of Morgan, C. J., except the portion dealing with the sufficiency of the information; as to that I concur in the dissent of Budge, J.